UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------

IVAN L. CHERRY,

                             Plaintiff,                    **MEMORANDUM & ORDER**
                                                           15-CV-6949 (MKB)
                  v.

NEW YORK CITY HOUSING AUTHORITY,
BOB AGBAI, FATIMA TURNER and MARIE
BAZELAIS,

                             Defendants.

-------------------------------------------------------------

MARGO K. BRODIE, United States District Judge:

      Plaintiff Ivan L. Cherry, proceeding *pro se*, commenced this action on December 3, 2015,

against Defendants the New York City Housing Authority ("NYCHA"), Bob Agbai, Fatima

Turner and Marie Bazelais. (Compl., Docket Entry No. 1.) Plaintiff filed an Amended

Complaint on March 3, 2016, asserting claims of discrimination, retaliation and hostile work

environment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*

("Title VII"), the Age Discrimination in Employment Act (the "ADEA"),[1] New York State

Human Rights Law (the "NYSHRL"), and New York City Human Rights Law (the

---

[1] Although Plaintiff does not explicitly assert a claim under the ADEA, because he includes allegations of age discrimination in the Amended Complaint and age discrimination is not actionable under Title VII, the Court construes his claim to seek relief under the ADEA. *See General Dynamics Land Sys., Inc. v. Cline*, 540 U.S. 581, 586 (2004) ("Congress chose not to include age within discrimination forbidden by Title VII."); *see also Tiffany v. Dzwonczyk*, --- F. App'x ---, --- 2017 WL 3568195, at *2 (2d Cir. Aug. 18, 2017) ("Title VII . . . covers discrimination on the basis of race, color, sex, religion, and national origin, not age.").

"NYCHRL"). (Am. Compl. 3.)[2] Plaintiff also brings claims under 42 U.S.C. § 1983 alleging

that he was deprived of his Fourteenth Amendment due process rights. (*Id.*) Defendant

NYCHA[3] moves to dismiss the Amended Complaint for failure to state a claim upon which relief

may be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Def. Mot. to

Dismiss ("Def. Mot."), Docket Entry No. 21; Def. Mem. in Supp. of Def. Mot. ("Def. Mem."),

Docket Entry No. 22.) For the reasons discussed below, the Court grants NYCHA's motion in

part and denies it in part.

## I. Background

The facts alleged in the Amended Complaint are assumed to be true for the purpose of

deciding this motion.[4] Plaintiff identifies himself as a "black African[–]American" male over the

age of forty. (Am. Compl. 3, 11.) From October 25, 2010, the day he was hired by NYCHA at

the Unity Plaza office as a "Secretary Level III," through September 26, 2014, the date NYCHA

terminated his employment, Plaintiff alleges that he was subjected to discriminatory treatment

based on his national origin, race, color, gender and age. (*Id.* at 3, 6–7.) Plaintiff was the only

male secretary in the Unity Plaza office and was the only black male secretary in his hiring pool

---

[2] Because the Amended Complaint is not consecutively paginated, the Court refers to the electronic document filing system ("ECF") pagination.

[3] The Individual Defendants have not been served with process in this action.

[4] Because Plaintiff is proceeding *pro se*, the Court considers Plaintiff's factual allegations in his opposition to the motion and in his sur-reply, in addition to the allegations in the Amended Complaint. *See, e.g.*, *Walker v. Schult*, 717 F.3d 119, 122 n.1 (2d Cir. 2013) ("A district court deciding a motion to dismiss may consider factual allegations made by a *pro se* party in his papers opposing the motion."); *Small v. Ortlieb*, No. 10-CV-1616, 2012 WL 3229298, at *1 (E.D.N.Y. Aug. 6, 2012) ("[A]s part of this [c]ourt's duty to construe *pro se* pleadings liberally, the [c]ourt will take account of all the facts contained in both [plaintiff's] amended complaint and his opposition papers." (citation omitted)).

throughout NYCHA. (*Id.* at 7.) Plaintiff was hired pursuant to the resolution of a lawsuit that required NYCHA to terminate provisional employees and hire candidates like Plaintiff from the civil service list. (*Id.*) Plaintiff experienced "considerable hostility" at the Unity Plaza office because he replaced an eight-year provisional secretary and it was "immediately made clear to [him] that a black male secretary was not welcome or wanted in the office." (*Id.*)

### a. Conditions of Plaintiff's employment at Unity Plaza

Plaintiff's office lacked a window and air conditioning, while female and non-black secretaries had both air conditioning and windows. (*Id.* at 7.) Because Plaintiff suffers from asthma and chronic obstructive pulmonary disease, the lack of air conditioning and windows made it difficult for Plaintiff to breathe. (*Id.*) Plaintiff's repeated requests for air conditioning were denied, but the day after Plaintiff left his office, an air conditioner was installed in the office. (*Id.*)

Throughout the course of Plaintiff's employment, various managers yelled at him without justification, falsely accused him of physical violence and labelled him belligerent, irate, crazy and out of control. (*Id.* at 8–12, 14.) Defendant Agbai, a housing assistant at Unity Plaza who is "a black person from another country," stereotyped American Blacks and portrayed Plaintiff as "angry and irrational, creating a picture of [Plaintiff] as an angry violent black man in order to try to drive [him] out or get [him] fired." (*Id.* at 8, 10–11.) The words used to describe Plaintiff were "tainted by stereotypical and racist manufactured rhetoric."[5] (*Id.* at 16.)

Plaintiff received "negative performance evaluations and misconduct memos," (*id.* at 11),

---

[5] Plaintiff asserts that when speaking about him, NYCHA employees accused him of being "aggressive," "creat[ing] a ruckus, [] going off," displaying "erratic behavior, trying to be bold" and further described him as "really gone, flailing arms, became confrontational, he's yelling, being offensive, barges his way into office, that ain't right." (Am. Compl. 14.)

and "was repeatedly written up for trivial incidents, which were often twisted or fabricated," (*id.* at 16). Non-party Diana Harvey, whom Plaintiff describes as a "former housing assistant," "wrote [Plaintiff] up" for leaving his desk unattended even though he did so because no one would cover his desk, and for walking an unannounced tenant to Harvey's office when Harvey failed to answer her telephone. (*Id.* at 9, 11–12.) Harvey also filed a police report falsely accusing Plaintiff of physical violence after Harvey disciplined Plaintiff for his interaction with a tenant, and placed the report in Plaintiff's "personal folder." (*Id.* at 8–9, 11.)

According to Plaintiff, Defendant Bazelais, who is a Haitian woman and was Plaintiff's manager at Unity Plaza as of January of 2012, "set the tone of bullying, harassment and humiliation against" him. (*Id.* at 10.) Bazelais told Plaintiff on several occasions "that [he] was not suited for the job because 'this is a woman's job'" and, as a man, "[he] could not do a woman's job as well as a woman." (*Id.* at 9; Pl. Opp'n to Def. Mot. ("Pl. Opp'n") 10, Docket Entry No. 20.)[6] She also compared Plaintiff to the female secretary he had replaced and told Plaintiff that the female secretary could complete the work "twice as good as [Plaintiff]." (Pl. Opp'n 4.) She regularly told him that he did not "belong" in the office and on "other occasions" she said that he should "apply for another job" because "this is a woman's job" and "this is not the job for" Plaintiff. (*Id.* at 11.) Plaintiff also overheard Bazelais state that "American Black people" are lazy and do not want to work. (Am. Compl. 9.)

In addition to Plaintiff's normal workload, Bazelais assigned Plaintiff work that should have been performed by housing assistants, not secretaries, and the female secretaries were not required to perform any such additional work. (Pl. Opp'n 14–15.) Because of the

---

[6] Because Plaintiff's opposition to the motion to dismiss includes duplicate paragraph numbers, the Court refers to the ECF pagination.

non-secretarial work assignments, Plaintiff was frequently required to work overtime and was reprimanded for failing to complete his secretarial duties. (*Id.* at 15; Am. Compl. 10, 17–18.) Bazelais also refused to authorize Plaintiff's overtime pay for the additional time Plaintiff had to spend working because of the non-secretarial work assignments. (Pl. Opp'n 15; Am. Compl. 10, 17–18.) Plaintiff believes that Bazelais overloaded him with work so that she could portray him as "incapable of doing [his] job." (Am. Compl. 18.) Bazelais also "completely ignored" Plaintiff's request to have an air conditioner placed in his office and she twice removed Plaintiff's "work order ticket" that he submitted to have someone from NYCHA put an air conditioner in his office. (*Id.* at 9; Pl. Opp'n 9.)

Near the end of April of 2013, Defendant Turner, a housing assistant, slammed a door "in [Plaintiff's] face" on three separate occasions. (Pl. Opp'n 18.) Plaintiff complained about the incident to Bazelais who told him that Turner was "more important" than he was and if he "didn't like it," then he would have to quit. (*Id.* at 18–19.) After complaining to Bazelais, Plaintiff went to his desk and started filling out an EEOC complaint about the ongoing harassment by Bazelais, Turner and Harvey. (*Id.* at 19.) Bazelais followed Plaintiff to his office, saw him working on the complaint and told him, "I see what you're doing, and I know what I can do." (Pl. Opp'n 18–19.) Plaintiff completed and filed the EEOC charge, alleging retaliation and discrimination based on his race, sex, national origin and color (the "April 2013 Charge"). (Pl. Opp'n 20; EEOC Docs. at 11–14, Docket Entry No. 14-1.) Plaintiff alleges that this incident motivated Bazelais as well as Turner to begin to levy false accusations of violence against him so that NYCHA would terminate his employment because "they could not provoke [him] to violence or to quit [his] job." (Pl. Opp'n 19.) Several days later, on May 1, 2013, Bazelais accused Plaintiff of engaging "in verbal and physical expressions of hostility" and using

"abusive or offensive language or gestures" toward her.  (NYCHA Letter dated Jan. 16, 2014 at 255–57, Docket Entry No. 14-4.)

### b.  Plaintiff's suspension

On or around July 9, 2013, Plaintiff asked Defendant Agbai, whose office was adjacent to Plaintiff's, if he could open Agbai's office door to help cool Plaintiff's office since Plaintiff lacked air conditioning.  (Am. Compl. at 21.)  Although Agbai agreed, when Plaintiff opened the door, Defendant Turner, "yelled from her office" that Agbai needed to close the door because Agbai's air conditioning was not working properly.  (*Id.* at 8, 21–22.)  Turner closed Agbai's door.  (*Id.* at 22.)  Plaintiff immediately called the NYCHA Borough Office about the conflict with Turner because he was concerned that the conflict would escalate.  (*Id.*)  When someone arrived from the Borough Office, that individual told Plaintiff that because Plaintiff threatened to punch Turner in the face, Plaintiff would be suspended for workplace violence.  (*Id.* at 23.)

On July 12, 2013, NYCHA suspended Plaintiff for approximately one month.  (Letter from NYCHA to Plaintiff dated July 12, 2013, Docket Entry No. 14-4; Pl. Opp'n 22.)

### c.  Conditions of Plaintiff's employment at Garvey-Prospect Plaza

On or about August 12, 2013,[7] Plaintiff returned to work after his suspension and was transferred to Garvey-Prospect Plaza.  (Pl. Opp'n 19.)  Regina Chu, Plaintiff's new manager, "had heard about what happened at Unity Plaza and was treating [Plaintiff] the same way or even worse."  (Am. Compl. 18; Pl. Opp'n 19.)  Chu "humiliated [Plaintiff] by holding town-hall type meetings" with the office staff to discuss Plaintiff's leave and medical issues, including Plaintiff's auto-immune disease and significant bone injuries.  (Am. Compl. 18; Pl. Opp'n 19.)

---

[7]  According to NYCHA, Plaintiff was transferred on August 14, 2013.  (Decl. of Jane E. Lippman ("Lippman Decl."), Docket Entry No. 23; NYCHA Human Resources Department Record Card, annexed to Lippman Decl. as Ex. A.)

Chu "raised unfounded allegations of sexual harassment in an attempt to get [Plaintiff] arrested or terminated." (Pl. Opp'n 19.) On one occasion when Plaintiff was sick, Chu refused to answer Plaintiff's call despite his numerous attempts to reach her by phone and recorded Plaintiff as being absent from work without excuse. (Am. Compl. 18–19; Pl. Opp'n 19.) "[N]o one else at [Garvey-Prospect Plaza] suffered similar treatment at the hands of" Chu. (Pl. Opp'n 19.)

### d. Plaintiff's termination

On January 16, 2014, NYCHA served Plaintiff with disciplinary charges. (NYCHA Letter dated Jan. 16, 2014 at 255–57.) The charges included an allegation that on or about May 1, 2013, Plaintiff "engaged in verbal and physical expressions of hostility" and used "abusive or offensive language or gestures" toward Bazelais. (*Id.*) In addition, the charges accused Plaintiff of misconduct against Turner based on the July 9, 2013 incident. (*Id.*)

On March 25 and May 8, 2014, trial officer Hadley Gold presided over a hearing pursuant to New York Civil Service Law section 75 ("Section 75").[8] (Section 75 Hr'g Tr., Docket Entry No. 14-4.) Plaintiff was accused of, among other things, "sexual harassment, assault on a female manager and threatening to punch a co-worker in the face." (Am. Compl. 17.) According to Plaintiff, the charges were "all completely erroneous allegations." (*Id.*)

Plaintiff alleges that Defendants Agbai, Turner and Bazelais fabricated charges against him and lied under oath during the Section 75 hearing, when they accused Plaintiff of violence toward women. (*Id.* at 12, 19.) Bazelais testified that on May 1, 2013, Plaintiff mailed a check

---

[8] Section 75 provides that covered employees "shall not be removed or otherwise subjected to any disciplinary penalty provided in this section except for incompetency or misconduct shown after a hearing upon stated charges pursuant to this section." N.Y. Civ. Serv. Law § 75(1). Plaintiff was represented by counsel at the Section 75 hearing. (Section 75 Hr'g Tr. at 2–252.)

and did not make a copy of it, which violated NYCHA practices.  (Section 75 Report and Recommendation at 7–8, annexed to Lippman Decl. as Ex. C.)  Bazelais approached Plaintiff about it and he became "enraged" and started "yelling and carrying on" and she was not able to calm him down.  (*Id.*)  Turner and Agbai testified about the events on July 9, 2013, that led to Plaintiff's suspension.[9]  (*Id.* at 3–5, 6–7.)  Gold "never questioned or investigated" any of the allegations as required by NYCHA policy and "twisted himself into a pretzel to excuse away obvious contradictory testimony by those witnesses."  (*Id.* at 12, 18.)  Gold found Plaintiff's testimony "not credible only because of [Plaintiff's] sex and skin color."  (*Id.* at 13.)

After the hearing, Gold found Plaintiff guilty of all the charges and recommended that NYCHA terminate Plaintiff's employment.  (*Id.* at 20–21.)  NYCHA approved Gold's recommendation of dismissal and terminated Plaintiff's employment, which termination became effective on September 26, 2014.  (Am. Compl. 3; NYCHA Letter dated Sept. 24, 2014, annexed to Lippman Decl. as Ex. D.)

Plaintiff appealed the decision to the New York City Civil Service Commission (the "CSC").  (Notice of CSC Action dated May 27, 2015, annexed to Lippman Decl. as Ex. E.)  On May 27, 2015, the CSC upheld Gold's decision recommending that NYCHA terminate Plaintiff's employment.  (*Id.*; Am. Compl. 13.)

On September 14, 2015, Plaintiff challenged his termination by filing a petition pursuant to Article 78 of the New York Civil Practice Law and Rules in New York State Supreme Court, New York County.  (Order and Judgment dated April 4, 2016, annexed to Lippman Decl. as

---

[9] An additional NYCHA employee testified regarding the July 9, 2013 events and another testified about a June 10, 2013, incident in which Plaintiff allowed a tenant to enter Turner's office when Turner was not present.  (Section 75 Report and Recommendation at 2–3, 9.)

Ex. F.)  On April 4, 2016, the petition was denied.  (*Id.*)

      **e.   EEOC charge**

In or around April of 2013, Plaintiff filed the April 2013 Charge, alleging that he had been subject to unlawful retaliation and discrimination based on his race, sex, national origin and color.[10]  (Pl. Opp'n 20; EEOC Docs. at 11–14.)  According to Plaintiff, the April 2013 Charge "was lost by, or mysteriously misplaced by the EEOC."  (Pl. Opp'n 21.)  Plaintiff attached to the Amended Complaint an unsigned copy of the April 2013 Charge, which is an EEOC intake questionnaire that is undated, unsigned and does not indicate that Plaintiff wanted to file a charge of discrimination.  (*Id.*; EEOC Docs. at 11–14.)  Plaintiff alleges that he "checked the box stating I want [] to file a complaint, and [he] signed the complaint after [he] printed it out," since he could not sign the document on a computer screen.  (Pl. Sur-Reply in Opp'n to Def. Mot. ("Pl. Sur-Reply") at 3, Docket Entry No. 31.)

Plaintiff was not notified of any action taken by the EEOC based on his April 2013 Charge, and, as a result, he contacted the EEOC to check the status of the charge.  (Pl. Opp'n 21.)  Plaintiff received a letter from the EEOC dated December 2, 2014, explaining that, according to EEOC records, Plaintiff filed a document with the EEOC on July 25, 2013, which document was assigned the complaint charge number 520-2013-2744.  (EEOC Docs. at 8.)  The EEOC had no record that the complaint was filed as a charge or that the EEOC notified NYCHA of the charge.  (*Id.*)  The letter further stated that the EEOC was searching for the paperwork associated with the charge.  (*Id.* at 8; Pl. Opp'n 22.)

Several months later, on May 26, 2015, the EEOC sent a letter to NYCHA explaining

---

[10]  Plaintiff filed a prior EEOC charge on July 26, 2011, and the EEOC issued a right-to-sue letter on November 19, 2011.  (Pl. Opp'n 20; EEOC Docs. at 8.)  However, Plaintiff decided not to file suit based on the July 26, 2011 charge.  (Pl. Opp'n 20.)

that the April 2013 Charge, charge number 520-2013-2744, was:

> accepted by our office for filing. Our records reflect that a document meeting the definition of an EEOC charge was received by our office on July 29, 2013, but, due to an error on the part of our office, it was not processed and notice was not served according to our usual procedures.

(Pl. Opp'n 22; Letter from EEOC to NYCHA dated May 26, 2015, annexed to Lippman Decl. as Ex. I.)[11]  According to NYCHA, it first learned of the charge after the May 26, 2015 letter. (Letter from EEOC to NYCHA dated May 26, 2015.)

On June 10, 2015, after the EEOC's letter to NYCHA about the April 2013 Charge, Plaintiff filed a supplement to the April 2013 Charge. (EEOC Docs. at 9–10.) The two-page, single-spaced document includes a brief narrative alleging "false charges made by Diane Harvey," "harassment and name calling and unfair treatment by female staff members, including Diane Harvey, Marie Bazelais, and Fatima Turner," and "disparate treatment in comparison to female secretaries," as well as a claim that Plaintiff was unjustly terminated and did not receive a fair termination hearing. (*Id.*) The document is signed by Plaintiff and notarized. (*Id.*)

On September 25, 2015, the EEOC issued Plaintiff a right-to-sue letter on the April 2013 Charge. (EEOC Docs. at 6–7.)

---

[11]  Although Plaintiff does not attach this letter to any of his court filings, he quotes from the letter in his opposition to the motion to dismiss. (Pl. Opp'n 22.) The Court therefore considers the letter incorporated by reference into the Amended Complaint, as the Court accepts Plaintiff's factual allegations in his opposition as supplementing the Amended Complaint. *See DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 112 (2d Cir. 2010) (noting that because the plaintiff referred in the complaint to certain e-mails, "the [d]istrict [c]ourt could deem them incorporated in the complaint and therefore subject to consideration" on a 12(b)(6) motion); *see also Vail v. City of New York*, 68 F. Supp. 3d 412, 427 (S.D.N.Y. 2014) ("Where new allegations in a pro se plaintiff's opposition memoranda are consistent with the allegations contained in the [c]omplaint, they may be read as supplements to the pleadings." (citation and internal quotations marks omitted)).

## II. Discussion

### a. Standards of review

#### i. 12(b)(6)

In reviewing a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court must construe the complaint liberally, "accepting all factual allegations in the complaint as true and drawing all reasonable inferences in the plaintiff's favor." *Concord Assoc.s, L.P. v. Entm't Prop. Trust*, 817 F.3d 46, 52 (2d Cir. 2016) (quoting *Chambers v. Time Warner Inc.*, 282 F.3d 147, 152 (2d Cir. 2002)); *see also Tsirelman v. Daines*, 794 F.3d 310, 313 (2d Cir. 2015) (quoting *Jaghory v. N.Y. State Dep't of Educ.*, 131 F.3d 326, 329 (2d Cir. 1997)). A complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Matson v. Bd. of Educ.*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)); *see also Pension Ben. Guar. Corp. ex rel. St. Vincent Catholic Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 717–18 (2d Cir. 2013). Although all allegations contained in the complaint are assumed true, this principle is "inapplicable to legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678.

In reviewing a *pro se* complaint, the court must be mindful that a plaintiff's pleadings should be held "to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104–105 (1976)); *see also Wiley v. Kirkpatrick*, 801 F.3d 51, 62 (2d Cir. 2015) (holding that courts must liberally construe papers submitted by *pro se* litigants "to make the strongest arguments they

suggest"); *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (noting that even after *Twombly*, the court "remain[s] obligated to construe a *pro se* complaint liberally").[12]

### ii. Employment discrimination claims

In analyzing whether a plaintiff has sufficiently alleged an employment discrimination claim, the Court must consider the pleading standard discussed above and the three-stage, burden-shifting framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Doe v. Columbia Univ.*, 831 F.3d 46, 54–55 (2d Cir. 2016) (discussing the *McDonnell Douglas* burden at the pleading stage in the context of Title VII cases); *Littlejohn v. City of New York*, 795 F.3d 297, 307–08 (2d Cir. 2015) (discussing burden-shifting); *see also St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506 (1993) (citing *Tex. Dep't of Cty. Affairs v. Burdine*, 450 U.S. 248, 253–55 (1981)). Under this framework, a plaintiff must first establish a prima facie case of discrimination. *St. Mary's Honor Ctr.*, 509 U.S. at 506; *Campbell v. N.Y.C. Transit Auth.*, 662 F. App'x 571, 59 (2d Cir. 2016); *Kirkland v. Cablevision*

---

[12] In support of its motion to dismiss, NYCHA submitted documents relating to the Section 75 and Article 78 decisions and appeals. The Court considers the documents that Plaintiff references in his filings or necessarily relies on in the Amended Complaint and his opposition to the motion, as incorporated into the Amended Complaint by reference including: the January 16, 2014 NYCHA disciplinary charge letter, the Section 75 Report and Recommendation, NYCHA's letter approving the hearing officer's decision, and the CSC decision affirming the decision, each of which is attached to NYCHA's declaration in support of its motion to dismiss. (*See* Am. Compl. 4; *id.* at 13; *id.* at 23; Pl. Opp'n 31); *see supra* note 11. The Court also takes judicial notice of the decision in Plaintiff's Article 78 hearing for the fact that the hearing occurred and that a final determination was reached, but not for the truth of the matters asserted therein. *See Global Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006) ("A court may take judicial notice of a document filed in another court not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings." (quoting *Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc.*, 146 F.3d 66, 70 (2d Cir. 1998))); *see, e.g., DeMasi v. Benefico*, 567 F. Supp. 2d 449, 457 (S.D.N.Y. 2008) (considering documents incorporated by reference in the complaint and taking judicial notice of a decision in an Article 78 proceeding).

*Sys.*, 760 F. 3d 223, 225 (2d Cir. 2014).  A plaintiff's burden at this stage is "minimal."

*Holcomb v. Iona Coll.*, 521 F.3d 130, 139 (2d Cir. 2008) (quoting *St. Mary's Honor Ctr.*, 509

U.S. at 506).  If the plaintiff meets her burden at this stage, a "temporary presumption" of

discrimination arises, and the burden shifts to the defendant-employer to articulate a legitimate,

nondiscriminatory reason for the challenged conduct.  *Vega v. Hempstead Union Free Sch. Dist.*,

801 F.3d 72, 84 (2d Cir. 2015) (quoting *Littlejohn*, 795 F.3d at 307, 311).  If the defendant-

employer articulates such a reason, the burden shifts back to the plaintiff-employee to show that

the defendant-employer's reason was pretext.  *Id.* at 83.

     At the pleading stage, a plaintiff does not need to prove discrimination or even allege

facts establishing every element of the *McDonnell Douglas* prima facie case, but the facts

alleged must give "plausible support to the reduced requirements" of the prima facie case.

*Littlejohn*, 795 F.3d at 311; *see also Doe*, 831 F.3d at 55 ("[A]t the 12(b)(6) stage of a Title VII

suit, allegation of facts supporting a minimal plausible inference of discriminatory intent suffices

as to this element of the claim because this entitles the plaintiff to the temporary presumption

of *McDonnell Douglas* until the defendant furnishes its asserted reasons for its action against the

plaintiff."); *Dawson v. N.Y.C. Transit Auth.*, 624 F. App'x 763, 767 (2d Cir. 2015); *Vega*, 801

F.3d at 84.  Thus, a plaintiff need only plead facts sufficient to give "plausible support" to the

plaintiff's "minimal" initial burden, which is governed by the statute under which he brings his

claims.  *Vega*, 801 F.3d at 84 (quoting *Littlejohn*, 795 F.3d at 307, 312); *see also Doe*, 831 F.3d

at 55.

     **b.   Title VII, NYSHLR and NYCHLR claims**

     The Court construes Plaintiff's factual allegations to bring claims for discrimination,

hostile work environment and retaliation under Title VII, the NYSHLR and the NYCHLR.

Apart from the standard for individual liability, the standards for evaluating employment discrimination and retaliation claims under Title VII and NYSHRL are identical, therefore, the Court analyzes Plaintiff's Title VII and NYSHLR claims together. Because the standard for NYCHRL claims is more lenient, the Court analyzes those claims separately.[13]

### i. Exhaustion of administrative remedies under Title VII

In the April 2013 Charge, Plaintiff complained of retaliation and discrimination based on race, sex, national origin and color. (EEOC Docs. at 11–12.) NYCHA argues that because the copy of the April 2013 Charge attached to the Amended Complaint is not signed or dated and because Plaintiff did not mark the box on the form indicating that he intended to file a charge, he did not "activate [the] EEOC's administrative process," and therefore failed to exhaust his administrative remedies in a timely manner. (Def. Mem. 6–7.) NYCHA also argues that Plaintiff's filing on June 11, 2015 was the only valid EEOC charge, and therefore only conduct that occurred after August 15, 2014 — within the 300-day statute of limitations under Title VII — is actionable. (*Id.*)

Plaintiff argues that he signed, dated and checked the box indicating he "wanted to file a charge" on his April 2013 Charge, and that the April 2013 Charge therefore satisfies his duty to

---

[13] *See Kelly v. Howard I. Shapiro & Assoc. Consulting Eng'rs, P.C.*, 716 F.3d 10, 14 (2d Cir. 2013) ("The standards for evaluating hostile work environment and retaliation claims are identical under Title VII and the NYSHRL." (citation omitted)); *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 109 (2d Cir. 2013) ("[C]ourts must analyze NYCHRL claims separately and independently from any federal and state law claims, construing the NYCHRL's provisions 'broadly in favor of discrimination plaintiffs, to the extent that such a construction is reasonably possible.'" (citations omitted)); *Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 n.1 (2d Cir. 2000) (noting that all employment discrimination claims under Title VII and NYSHLR are held to the same standard).

exhaust all administrative remedies.[14]  (Pl. Opp'n 20–21; Pl. Sur-Reply 3.)

As discussed further below, the Court finds that Plaintiff adequately exhausted his administrative remedies because (1) the April 2013 Charge evinced an intent to initiate the administrative process and (2) Plaintiff's June of 2015 supplemental filing cures any signature defect in the April 2013 Charge, and therefore, Plaintiff's claims based on conduct that occurred on or after July 1, 2012 are timely.

### 1. The April 2013 Charge is a valid charge

Before filing a Title VII or ADEA action in federal court, a plaintiff must file charges of employment discrimination with the EEOC within 300 days of the alleged discrimination. 42 U.S.C. § 2000e-5(e)(1); *Perez v. Harbor Freight Tools*, --- F. App'x ---, ---, 2017 WL 2644638, at *1 (2d Cir. June 20, 2017) ("Under Title VII, a plaintiff in New York State must file an employment discrimination charge with the EEOC within 300 days after an alleged unlawful employment practice occurred." (citations and internal quotations marks omitted)); *Fowlkes v. Ironworkers Local 40*, 790 F.3d 378, 385 (2d Cir. 2015) ("Exhaustion of administrative remedies through the EEOC is an essential element of the Title VII . . . statutory scheme[ ]; accordingly, it is a precondition to bringing such claims in federal court." (alterations in original) (internal quotation marks omitted) (quoting *Legnani v. Alitalia Linee Aeree Italiane, S.P.A.*, 274 F.3d 683, 686 (2d Cir. 2001))); *Tanvir v. N.Y.C. Health & Hosp. Corp.*, 480 F. App'x 620, 621 (2d Cir. 2012) ("Exhaustion of administrative remedies through the EEOC is an essential element of the Title VII and ADEA statutory schemes and, as such, a precondition to bringing such claims in

---

[14]  Box two of the April 2013 Charge provides in relevant part, "I want to file a charge of discrimination, and I authorize the EEOC to look into the discrimination I described above." (EEOC Docs. at 14.)  In the copy of the April 2013 Charge provided to the Court, box two is not checked.  (*Id.*)

federal court." (citation omitted)).  This requirement is analogous to a statute of limitations.  *See Vega*, 801 F.3d at 79; *Patterson*, 375 F.3d at 220 (dismissing as untimely claims based on conduct that occurred more than 300 days prior to the filing of EEOC charge).

Title VII regulations require in relevant part that "[a] charge shall be in writing and signed and shall be verified" and shall include the "name and address of the person against whom the charge is made" and a "statement of the facts . . . constituting the alleged unlawful employment practice."  29 C.F.R. §§ 1601.9, 1601.12(a); *Price v. City of New York*, 797 F. Supp. 2d 219, 225 (E.D.N.Y. 2011) ("Title VII regulations require that '[a] charge shall be in writing and signed and shall be verified.'" (citing 29 C.F.R. § 1601.9)).  An EEOC intake questionnaire may constitute an EEOC "charge."  *Holowecki v. Fed. Express Corp.*, 440 F.3d 558, 568 (2d Cir. 2006) *aff'd*, 552 U.S. 389 (2008).

In *Holowecki*, the Second Circuit considered an EEOC questionnaire filed by one of the plaintiffs who alleged violations of the ADEA, and held that an EEOC questionnaire that complies with the relevant EEOC regulatory requirements "and contains the information required by EEOC interpreting regulations is an EEOC 'charge' as long as it demonstrates a party's intent to activate the administrative process."  *Holowecki*, 440 F.3d at 567.  The plaintiff in *Holowecki* filed an intake questionnaire with the EEOC with an accompanying multiple-page affidavit describing the discriminatory conduct.  *Id.* at 568.  The Court found the filing was a charge because of the "forceful tone and content [in] the affidavit" and the unambiguous request that the employer's discriminatory practices end, and because "by checking the 'consent' box on the questionnaire form, [the plaintiff] consented to the disclosure of her identity to the employer that allegedly discriminated against her."  *Id.*  In affirming the decision, the Supreme Court held that an intake questionnaire can be considered a charge if it was "reasonably construed as a

request for the agency to take remedial action to protect the employee's rights or otherwise settle a dispute between the employer and the employee."[15] *Fed. Express Co. v. Holowecki*, 552 U.S. 389, 402 (2008); *see also Watson v. Richmond Univ. Med. Ctr.*, No. 14-CV-1033, 2016 WL 8465986, at *6 (E.D.N.Y. June 24, 2016), *report and recommendation adopted*, 2017 WL 943928 (E.D.N.Y. Mar. 8, 2017) ("Courts will find a charge sufficient if [in] addition to the information required by the regulations . . . the filing is reasonably construed as a request for the agency to take remedial action to protect the employee's rights or otherwise settle a dispute between the employer and the employee." (internal quotation marks omitted) (quoting *Fed. Express Co.*, 552 U.S. at 402)).

When the plaintiff filed her intake form in *Holowecki*, the "consent" box only gave the filer the option to consent to the EEOC disclosing his or her identity to the employer. *See Holowecki*, 440 F.3d at 568. Since *Holowecki*, the "EEOC has changed the form to require a claimant to clearly express his or her intent by checking one of two boxes, thereby forc[ing] claimants to decide whether their questionnaire is a request for the agency to take remedial action, enabling courts to make an objective determination as to whether each questionnaire is a charge of discrimination or merely a request for further information." *Lugo-Young v. Courier Network, Inc.*, No. 10-CV-3197, 2012 WL 847381, at *6 (E.D.N.Y. Mar. 13, 2012) (citations and internal quotations marks omitted); *Brown v. City of New York*, No. 11-CV-2915, 2013 WL 3789091, at *8 (S.D.N.Y. July 19, 2013) (same). Since the EEOC changed the form, courts have generally held that checking the box "which authorizes the EEOC 'to look into the

---

[15] The Supreme Court's decision in *Holowecki* applies in the Title VII context. *See Price v. City of New York*, 797 F. Supp. 2d 219, 226 (E.D.N.Y. 2011) ("[F]ederal courts in this Circuit have frequently applied *Holowecki* in assessing the timeliness of charges in Title VII cases." (collecting cases) (adopting report and recommendation in part and rejecting in part)).

discrimination' described in the form and describing that discrimination in detail in the [q]uestionnaire . . . qualifies as a charge with the EEOC for timeliness purposes." *Miller v. St. Luke's Roosevelt Hosp. Ctr.*, No. 15-CV-7019, 2016 WL 1275066, at *5 (S.D.N.Y. Apr. 1, 2016) (citations and internal quotation marks omitted); *see also Acheampong v. N.Y.C. Health and Hosps. Corp.*, No. 11-CV-9205, 2015 WL 1333242, at *7 (S.D.N.Y. Mar. 25, 2015) ("Checking Box 2 on the current form of the EEOC's intake questionnaire, which authorizes the EEOC to look into the discrimination described in the form and describing that discrimination in detail in the [q]uestionnaire, as the [p]laintiff did here, qualifies as a charge with the EEOC for timeliness purposes." (citation and internal quotation marks omitted)).

Based on Plaintiff's allegations, Plaintiff satisfies the EEOC regulations and sufficiently demonstrates his "intent to activate the administrative process" because he named NYCHA as the charged party, included allegations of retaliation and discrimination based on race, sex, national origin and color, alleges that he signed the April 2013 Charge and that he checked the box indicating he intended to file a charge. *Holowecki*, 440 F.3d at 567; 29 C.F.R. § 1601.9; *see, e.g.*, *Evans v. Excellus Health Plan, Inc.*, No. 11-CV-1248, 2012 WL 3229292, at *5 (N.D.N.Y. Aug. 6, 2012) ("[The] [p]laintiff checked Box [two], which further states that [the] [p]laintiff is seeking to file a charge of discrimination and authorizes the EEOC to look into the discrimination alleged.  Therefore, [the] [p]laintiff unambiguously requested the EEOC to act on her claims." (citations and internal quotation marks omitted)); *Kaye v. Storm King Sch.*, No. 11-CV-3369, 2011 WL 7101193, at *3 (S.D.N.Y. Nov. 18, 2011) (finding that the plaintiff's EEOC submissions met the necessary standard because the "documents provide the basic information relating to their charges, extensively detailed accounts of the alleged discrimination, and a check mark in the box that states 'I want to file a charge of discrimination, and I want the EEOC to

look into the discrimination I described above'"); *cf. Elliot-Leach v. N.Y.C. Dep't of Educ.*, --- F. App'x ---, ---, 2017 WL 4071121, at *1 (2d Cir. Sept. 14, 2017) (affirming a district court's dismissal of a plaintiff's claims for failure to exhaust where the EEOC informed the defendant that "there is no charge filed by [the plaintiff] against the City of New York or its agencies, no charge file exists, and no 'right to sue' has been or will be issued based on any past, current or pending matter"); *Lugo-Young*, 2012 WL 847381, at *6 (finding that a plaintiff failed to allege exhaustion of her EEOC administrative remedies where she alleged that she checked the box on her EEOC complaint indicating that she did not intend to file an EEOC charge but instead checked only the box indicating that she wanted to speak with an EEOC employee before filing a charge).

Although Plaintiff has not produced the signed charge with the appropriate box checked, liberally construing Plaintiff's submissions and accepting his allegations as true, the Court "reasonably construes" the April 2013 Charge "as a request for the agency to take remedial action to protect the employee's rights or otherwise settle a dispute between the employer and the employee."[16] *Holowecki*, 552 U.S. at 402, 406 ("Documents filed by an employee with the EEOC should be construed, to the extent consistent with permissible rules of interpretation, to protect the employee's rights and statutory remedies."); *Mohamed v. N.Y. Univ.*, No. 14-CV-8373, 2015 WL 3387218, at *11 (S.D.N.Y. May 21, 2015) (refusing to engage in a credibility

---

[16] Contrary to NYCHA's argument that the EEOC did not recognize the validity of the April 2013 Charge, (Def. Mem. 7), in a May 26, 2015 EEOC letter to NYCHA, before Plaintiff filed the June of 2015 addition to his charge, the EEOC acknowledged that the April 2013 Charge was a valid charge. (Pl. Opp'n 22; Letter from EEOC to NYCHA dated May 26, 2015 ("Our records reflect that a document meeting the definition of an EEOC charge was received by our office on July 29, 2013, but, due to an error on the part of our office, it was not processed and notice was not served according to our usual procedures.").)

analysis regarding disputed allegations between the parties as to the EEOC's treatment of the plaintiff's charge of discrimination), *report and recommendation adopted*, 2015 WL 5307391 (S.D.N.Y. Sept. 10, 2015); *Morales v. N.Y.S. Dep't of Labor Div. of Emp. Servs.*, No. 06-CV-899, 2007 WL 2874570, at *8 (N.D.N.Y. Sept. 27, 2007) (declining to dismiss Title VII claims on statute of limitations grounds because "[a]lthough the complaint revealed possible defects related to the timely filing requirement, [considering the plaintiff's allegations that she filed a timely informal letter] there exists an equally possible likelihood that [the plaintiff] can raise factual setoffs to [the defendant's] affirmative defense").

### 2. Plaintiff's June 2015 EEOC filing cured any defects in the April 2013 Charge

Even if the April 2013 Charge was defective as initially filed, Plaintiff's signed and notarized supplemental filing on June 10, 2015 — which NYCHA concedes is a charge and which was filed before the EEOC issued the right-to-sue letter on September 25, 2015, (Def. Mem. 6–7) — would have cured any signature defect in the April 2013 Charge.

 "A charge may be amended to cure technical defects or omissions, including failure to verify the charge." 29 C.F.R. § 1601.12(b). "Such amendments and amendments alleging additional acts which constitute unlawful employment practices related to or growing out of the subject matter of the original charge will relate back to the date the charge was first received." 29 C.F.R. § 1601.12(b); *Littlejohn*, 795 F.3d at 323 ("Although EEOC regulations do allow written statements of fact to amend a charge, those regulations allow such amendments only insofar as they clarify and amplify allegations made in the original charge or alleg[e] additional acts which constitute unlawful employment practices related to or growing out of the subject matter of the original charge." (internal quotation marks omitted) (quoting *Holtz v. Rockefeller & Co.*, 259 F.3d 62, 83 (2d Cir. 2001))). The regulations do not specify the time limit to file such

an amendment, but courts generally allow amendment until the EEOC closes its investigation. *See Cooper v. Zerox Corp.*, 994 F. Supp. 429, 433–35 (W.D.N.Y. 1998) (reviewing cases where courts have "rejected as untimely amendments made well after the EEOC's investigation was closed").

The June 11, 2015 EEOC filing bears the same charge number as the April 2013 Charge and can be construed as an amendment that relates back to the April 2013 Charge, thereby curing any signature defect. *See, e.g.*, *Price*, 797 F. Supp. 2d at 226 (finding that an unsigned intake questionnaire satisfied the ADA's regulatory charge requirements where the plaintiff cured the signature defect by filing a signed charge with the same charge number eight months later); *Winston v. Mayfair Care Ctr., Inc.*, No. 09-CV-4792, 2011 WL 10045251, at *6 (E.D.N.Y. Mar. 4, 2011) (finding that a subsequent signed and verified EEOC complaint cured the defect in the unsigned or verified New York State Division of Human Rights intake questionnaire); *see also Equal Emp't Opportunity Comm'n v. Sears, Roebuck & Co.*, 650 F.2d 14, 18 (2d Cir. 1982) (favorably noting that federal regulations "have treated the 'failure to swear' as a technical defect curable by amendment" (citing 29 C.F.R. § 1601.12(b))).

Thus, Plaintiff's April 2013 Charge exhausted his administrative remedies and Plaintiff's discrimination claims based on national origin, race, color and gender discrimination occurring on or after July 1, 2012 — approximately 300 days prior to Plaintiff filing the April 2013 charge — are actionable.[17]

---

[17] Where, as here, it appears that the EEOC mishandled Plaintiff's charge and has continued to provide inconsistent information regarding the time when the charge was filed, the Court accepts the truth of Plaintiff's allegations that he filed the charge in late April of 2013, (Pl. Opp'n 20). (*See* EEOC Docs. at 8 (indicating the charge was filed on July 25, 2013); Letter from EEOC to NYCHA dated May 26, 2015 (indicating the charge was filed on July 29, 2014).) Construing the allegations in Plaintiff's favor, the Court finds that Plaintiff's allegations of

### 3. Plaintiff's age discrimination claim is not administratively exhausted

Plaintiff did not check the age discrimination box or include any age discrimination allegations in the April 2013 Charge or in the June 2015 supplemental filing. (EEOC Docs. at 11–14.) Therefore, because Plaintiff's age discrimination claim is of a completely different nature from Plaintiff's national origin, race, color and gender claims specified in the April 2013 Charge, it is not "reasonably related" to the charges included in the April 2013 Charge, and therefore is not exhausted. *See, e.g.*, *Littlejohn*, 795 F.3d at 321–24 (holding that a sexual harassment claim was not exhausted where the plaintiff failed to claim discrimination based on sex on the EEOC charge form, to include any allegations of sexual harassment in any of her supplemental statements, and the claims were not "reasonably related" to her claims based on race and color); *Hawkins v. Wegmans Food Mkt.*, 224 F. App'x 104, 105 (2d Cir. 2007) ("[I]t cannot be said that the allegations of race and age discrimination are reasonably related to the [gender and disability] claims in [the plaintiff's] EEOC filing; thus, these claims remain unexhausted, and, accordingly, should have been dismissed by the district court." (citing *Williams*, 458 F.3d at 70)). Accordingly, the Court dismisses Plaintiff's age discrimination claim. *See Floyd v. Lord & Taylor*, 96 F. App'x 792, 793 (2d Cir. 2004) (affirming a district court's dismissal of a complaint where the plaintiff failed to submit any documentation showing that she had filed a complaint with the EEOC, a "prerequisite to bringing suit in federal court under Title VII, the ADEA, and the ADA").

---

conduct occurring on or after July 1, 2012 are timely. Moreover, regardless of whether the April 2013 Charge was filed in April or July of 2013, the majority of the conduct Plaintiff complains about regarding his final year of employment at Unity Plaza in 2013 would be timely, (Letter from NYCHA to Plaintiff dated July 12, 2013; Pl. Opp'n 22). The Court therefore declines to address Plaintiff's equitable tolling and continuing violation arguments.

### ii. Claims against the Individual Defendants

Plaintiff brings this action against NYCHA and three Individual Defendants — Agbai, Turner and Bazelais. (*See generally* Am. Compl.) NYCHA moves to dismiss the Title VII claims against the Individual Defendants because there is no individual liability under Title VII and moves to dismiss the Individual Defendants from the action because they have not been served with process. (Def. Mem. 1 n.1.)

Because individuals are not subject to liability under Title VII, the Court dismisses the Title VII claims against the Individual Defendants — Agbai, Turner and Bazelais. *See Mussallihattillah v. McGinnis*, --- F. App'x ---, ---, 2017 WL 1147261, at *2 (2d Cir. Mar. 27, 2017) (holding that the plaintiff's Title VII claims "against the individual defendants fail as a matter of law" (citing *Patterson v. County of Oneida*, 375 F.3d 206, 221 (2d Cir. 2004))); *Cayemittes v. City of N.Y. Dep't of Hous. Pres. and Dev.*, 641 F. App'x 60, 61–62 (2d Cir. Mar. 7, 2016) ("Title VII does not provide for individual liability."). However, because Plaintiff also alleges claims against the Individual Defendants pursuant to the NYSHRL and the NYCHRL that do provide for individual liability, the Court also discusses the lack of service of process.[18]

---

[18] Although NYCHA does not expressly move to dismiss under Rule 12(b)(5), it moves to dismiss the Amended Complaint against the Individual Defendants for failure to serve with process, and the Court therefore construes the motion as a motion pursuant to Rule 12(b)(5) in addition to Rule 12(b)(6). *See* Fed. R. Civ. P. 12(b)(5) (Rule 12(b)(5) permits a party to move to dismiss the complaint for insufficient service of process.) "In considering a Rule 12(b)(5) motion to dismiss for insufficient service of process, a court must look[] to matters outside the complaint to determine whether it has jurisdiction." *George v. Prof'l Disposables Int'l, Inc.*, 221 F. Supp. 3d 428, 432 (S.D.N.Y. 2016) (internal quotation marks omitted) (quoting *Cassano v. Altshuler*, 186 F. Supp. 3d 318, 320 (S.D.N.Y. 2016)); *see also Hawthorne v. Citicorp Data Sys., Inc.*, 219 F.R.D. 47, 49 (E.D.N.Y. 2003) ("Without proper service a court has no personal jurisdiction over a defendant."). A court considers whether the plaintiff has complied with Rule 4, which governs the content, issuance and service of a summons. *DeLuca v. AccessIT Grp., Inc.*, 695 F. Supp. 2d 54, 64 (S.D.N.Y. 2010). "Once a defendant challenges the sufficiency of service of process, the burden of proof is on the plaintiff to show the adequacy of service." *Id.* (citation omitted); *accord Khan v. Khan*, 360 F. App'x 202, 203 (2d Cir. 2010).

Under Rule 4(m), a plaintiff must serve the summons and complaint on a defendant within ninety days of filing the complaint. Fed. R. Civ. P. 4(c)(1). *Pro se* litigants proceeding *in forma pauperis* are entitled to rely on the United States Marshals to help effect service of process. *See Meilleur v. Strong*, 682 F.3d 56, 62 (2d Cir. 2012). However, this reliance is not absolute. *Id.* at 63 ("If a plaintiff proceeding [*in forma pauperis*] chooses to rely on the Marshals to serve the relevant parties, and it becomes apparent that the Marshals will not accomplish this by the Rule 4(m) or court-ordered deadline, she must advise the district court that she is relying on the Marshals to effect service and request a further extension of time for them to do so.").

Rule 4(m) provides that:

> If a defendant is not served within [ninety] days after the complaint is filed, the court — on motion or on its own after notice to the plaintiff — must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

Fed. R. Civ. P. 4(m). "It is clear under the second clause of Rule 4(m) that an extension is always warranted upon a showing of 'good cause,'" and "[t]he first clause of Rule 4(m), which makes no mention of good cause, grants discretion to district courts in a backhanded fashion by dictating that they . . . must decide to dismiss . . . or decide not to dismiss. But no criteria for this decision are supplied in the rule itself." *Zapata v. City of New York*, 502 F.3d 192, 197 (2d Cir. 2007). In determining whether a discretionary extension is appropriate absent good cause, a court considers the following factors: (1) whether any applicable statutes of limitations would bar the action once refiled; (2) whether the defendant had actual notice of the claims asserted in the complaint; (3) whether the defendant attempted to conceal the defect in service; and (4) whether the defendant would be prejudiced by extending the plaintiff's time for service. *See Zankel v. United States*, 921 F.2d 432, 437–38 (2d Cir. 1990) (discussing the discretionary

factors in a suit against the United States government); *Jones v. Westchester County*, 182 F.

Supp. 3d 134, 145 (S.D.N.Y. 2016) (discussing the discretionary factors in a case involving a

non-government defendant); *Fowler v. City of New York*, No. 13-CV-2372, 2015 WL 9462097,

at *5 (E.D.N.Y. Dec. 23, 2015) (same); *DeLuca v. AccessIT Grp., Inc.*, 695 F. Supp. 2d 54, 66

(S.D.N.Y. 2010) (collecting cases); *see also Soos v. Niagara County*, 195 F. Supp. 3d 458, 467

(W.D.N.Y. 2016); *Howell v. Campbell*, No. 15-CV-3705, 2016 WL 1241529, at *4 (S.D.N.Y.

Mar. 23, 2016); *Beauvoir v. U.S. Secret Serv.*, 234 F.R.D. 55, 58 (E.D.N.Y. 2006).

The Second Circuit has held that when district courts decide whether to dismiss a

complaint for failure of proper service, "*pro se* plaintiffs should be granted special leniency."

*Thrall v. Cent. N.Y. Reg'l Trans. Auth.*, 399 F. App'x 663, 666 (2d Cir. 2010) (quoting *Lesane v.*

*Hall's Sec. Analyst, Inc.*, 239 F.3d 206, 209 (2d Cir. 2001)); *see also Jaiyeola v. Carrier Corp.*,

73 F. App'x 492, 493–94 (2d Cir. 2003) (reversing a district court's decision to dismiss the

*pro se* plaintiff's complaint for failure of proper service). The Second Circuit explained that:

> Rule 4 of the Federal Rules is to be construed liberally "to further
> the purpose of finding personal jurisdiction in cases in which the
> party has received actual notice." We further noted that "incomplete
> or improper service will lead the court to dismiss the action *unless*
> *it appears that proper service may still be obtained*."

*Jaiyeola*, 73 F. App'x at 494 (quoting *Romandette v. Weetabix Co.*, 807 F.2d 309, 311 (2d Cir.

1986)).

Here, although the Individual Defendants have not been served to date, (Def. Mem.

1 n.1), there is "good cause" to excuse the failure to serve and to grant an extension of time to

effectuate service. A review of the case docket reveals that at the initiation of the case, the

Marshals were directed to serve NYCHA but not directed to serve the Individual Defendants.

(*See* Order dated Dec. 11, 2015, Docket Entry No. 5.) Plaintiff relied upon the Marshals to serve

the Individual Defendants and brought the lack of service to the Court's attention at a pre-motion

conference on May 4, 2016.  (Pl. Sur-Reply 1.)  In view of these facts, there is "good cause" to grant an extension.  *See Jones*, 182 F. Supp. 3d at 144 ("Where *pro se* plaintiffs reasonably rely on various arms of the [c]ourt during the service process but those actors fail to carry out their duties, courts have found 'good cause' for service failures." (citations omitted) (collecting cases)); *McCalmann v. Partners in Care*, No. 01-CV-5844, 2002 WL 856465, at *1 (S.D.N.Y. Apr. 25, 2002) ("The failure of the Marshals Service to properly effect service of process constitutes good cause within the meaning of Rule 4(m)." (internal quotation marks omitted)).

Moreover, under the circumstances of this case, there is little, if any, prejudice to the Individual Defendants because NYCHA has been served with process and is defending the litigation both on its own behalf and on the behalf of its employees, the unserved Individual Defendants.  *See, e.g.*, *Jones*, 182 F. Supp. 3d at 144 ("[T]he unserved Defendants do not cite any prejudice that has resulted from their failure to be served.  Indeed, in cases like this, where all defendants are employed by a common employer . . . , it is unclear what prejudice [the] unserved defendants may suffer." (citations omitted) (collecting cases)); *Tabb v. Rosemary*, No. 12-CV-1520, 2014 WL 240266, at *7 (S.D.N.Y. Jan. 22, 2014) (finding "little if any prejudice to the . . . as-yet unserved defendants occasioned by the delay in serving them," because the defendants "are all DOC employees and will presumably be represented by common counsel" and an "equal[ly-]interest[ed]" individual co-defendant had been "vigorously litigat[ing]" the action).  Furthermore, even in the absence of good cause, the Court has discretion to extend the time to serve process.  *See Zapata*, 502 F.3d at 193 ("[D]istrict courts may exercise their discretion to grant extensions under Rule 4(m) absent a showing of good cause under certain circumstances.").

Accordingly, the Court directs the Marshals to serve NYCHA[19] with the summons and

the Amended Complaint on behalf of the Individual Defendants against whom claims survive.[20]

### iii. Title VII and NYSHLR gender discrimination claims

Title VII requires that "a plaintiff must first establish a *prima facie* case of discrimination

by showing that: '(1) []he is a member of a protected class; (2) []he is qualified for h[is] position;

(3) []he suffered an adverse employment action; and (4) the circumstances give rise to an

---

[19]  At the May 4, 2016 conference before the Court NYCHA agreed to accept service on behalf of the Individual Defendants.  (Def. Mem. 1 n.1.)

[20]  Although the Court grants Plaintiff an extension of time to effect proper service on the remaining Individual Defendants, the Court lacks personal jurisdiction over the Individual Defendants until Plaintiff effects proper service on them.  *See Dynegy Midstream Servs. v. Trammochem,* 451 F.3d 89, 94 (2d Cir. 2006) ("Before a federal court may exercise personal jurisdiction over a defendant" and address the merits of the claims against the defendant, "the procedural requirement of service of summons must be satisfied." (citation and internal quotation marks omitted)).

However, because the Court is extending Plaintiff's time to effect proper service and NYCHA has briefed the merits of the claims against the Individual Defendants, the Court addresses NYCHA's arguments on the merits of the claims against the Individual Defendants — to avoid the merits at this time would waste judicial resources.  *See United States v. Vazquez*, 145 F.3d 74, 80 & n.3 (2d Cir. 1998) (addressing the merits of the case even though personal jurisdiction was not established due to lack of proper service because "the failure timely to serve a summons and complaint on the opposing party is excusable, and therefore this is not an exercise of the hypothetical jurisdiction of the sort disapproved of by the Supreme Court" (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 93–101 (1998))); *Howell v. Campbell*, No. 15-CV-3705, 2016 WL 1241529, at *4 (S.D.N.Y. Mar. 23, 2016) (granting an extension of time to effect proper service and addressing the merits of the case); *see also Leroy v. Great W. United Corp.*, 443 U.S. 173, 180 (1979) ("[P]ersonal jurisdiction . . . is [not] fundamentally preliminary in the sense that subject-matter jurisdiction is, for [it is a] personal privilege[] of the defendant, rather than [an] absolute stricture[] on the court."); *F5 Capital v. Pappas*, 856 F.3d 61, 81 (2d Cir. 2017) (holding that, whenever possible, courts should resolve "all . . . disputes arising from the same core of facts and thereby conserve judicial resources").

If Plaintiff fails to effect proper service on the remaining Individual Defendants within the time specified by the Court in this Memorandum and Order, NYCHA may renew its motion to dismiss for lack of personal jurisdiction over the Individual Defendants, and the Court will vacate its decision as to the merits of Plaintiff's claims against the Individual Defendants and dismiss those claims without prejudice.  *See Kelson v. Paterson*, 542 F.3d 281, n.14 (2d Cir. 2008) (holding that "a court may at any time dismiss for lack of jurisdiction").

inference of discrimination.'" *Vega*, 801 F.3d at 83 (quoting *Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 (2d Cir. 2000)). "[A]bsent direct evidence of discrimination," to survive a motion to dismiss a claim of employment discrimination in violation of Title VII, a plaintiff must allege facts that plausibly support a finding that he suffered an adverse employment action and "has at least minimal support for the proposition that the employer was motivated by discriminatory intent." *Littlejohn*, 795 F.3d at 311; *see Luka v. Bard Coll.*, --- F. Supp. 3d ---, ---, 2017 WL 2839641, at *4 (S.D.N.Y. June 29, 2017).

Plaintiff alleges he is a black American male and was discriminated against because of his gender[21] when (1) NYCHA terminated his employment, (2) Bazelais gave him non-

---

[21] The facts as alleged are insufficient to support a discrimination claim based on Plaintiff's race, color, and national origin, and accordingly, the Court dismisses Plaintiff's Title VII, NYSHLR and NYCHRL claims based on these protected classes. Plaintiff's allegations that Agbai generally stereotyped American Blacks and tried to portray Plaintiff as "angry and irrational, creating a picture of [Plaintiff] as an angry violent black man in order to try to drive [him] out or get [him] fired," (Am. Compl. 10–11), does not provide a basis for the Court to infer Agbai harbored discriminatory animus that contributed to Plaintiff's termination. There are no allegations that Agbai ever made any comments to Plaintiff calling him an "angry" or "scary" black man; rather, Plaintiff perceived that he was stereotyped because of the adjectives used to describe him, none of which actually implicate his race, color or national origin. (*See id.* 8, 10–11 (Plaintiff alleges that Agbai, "a black person from another country," stereotyped American Blacks and portrayed Plaintiff as "angry and irrational, creating a picture of [Plaintiff] as an angry violent black man in order to try to drive [him] out or get [him] fired.").) These allegations do not suggest any discriminatory animus based on Plaintiff's race, color or national origin. *See, e.g., Williams v. Time Warner Inc.*, No. 09-CV-2962, 2010 WL 846970, at *4 (S.D.N.Y. Mar. 3, 2010) (finding that a plaintiff's allegations that she was perceived as an "angry black woman," in part because at least one employee had complained that she was "up in his face," were not sufficient to show an inference of discrimination on a motion to dismiss); *see also Cuttino v. Genesis Health Ventures*, No. 04-CV-575, 2006 WL 62833, at *5–6 (D. Conn. Jan. 11, 2006) (declining to find an inference of discrimination based on a letter that did not reference the plaintiff's race but described the plaintiff as aggressive and intimidating based on specific interactions with the plaintiff and where the plaintiff was replaced by another employee of her same race).

Similarly, Bazelais' statement that "American Black people" are lazy and do not want to work, (Am. Compl. 9), is a stray remark and is insufficient to infer national origin discrimination, particularly where Plaintiff does not allege that Plaintiff was treated differently

28

secretarial work assignments and refused to authorize his overtime pay, and (3) various

Defendants and NYCHA employees erroneously disciplined him by issuing him "write ups,"

"negative performance evaluations and misconduct memos." (Am. Compl. 3, 4–5, 8–12, 16–18;

Pl. Opp'n 14–15, 24–25.) NYCHA does not dispute that Plaintiff's termination constitutes an

adverse employment action, but argues that Plaintiff fails to allege that he suffered any other

adverse action and that Plaintiff fails to allege that his termination or any of the other

complained-of conduct was motivated by discriminatory intent.[22] (Def. Mem. 19–20.) The

Court addresses each argument below.

### 1. Adverse employment action

Plaintiff alleges three separate adverse actions: (1) the termination of his employment,

(Pl. Opp'n 24); (2) the assignment of non-secretarial work, which resulted in Plaintiff working

overtime hours without receiving overtime pay, (Am. Compl. 10, 17–18; Pl. Opp'n 14–15, 24–

25); and (3) the disciplinary "write-ups," "negative performance evaluations and misconduct

---

from non-"American Black people." *See Gonzalez v. Allied Barton Sec. Servs.*, No. 08-CV-9291, 2010 WL 3766964, at *5 (S.D.N.Y. Sept. 7, 2010) (finding that an employee's stray remark that he did not feel that "women should be working the midnight shift" was not sufficient to satisfy the discriminatory motive necessary to establish a prima facie case of discrimination), *report and recommendation adopted*, 2010 WL 3766954 (S.D.N.Y. Sept. 27, 2010).

[22] NYCHA argues that because Plaintiff initially alleged in his Amended Complaint that his termination was caused by retaliation, his argument in his opposition to the motion that his termination was caused by discrimination "must be disregarded" as the allegations are inconsistent with his Amended Complaint. (Def. Reply in Supp. of Def. Mot. ("Def. Reply") 7, Docket Entry No. 26.) The Court rejects NYCHA's argument because it is not supported by law. *See* Fed. R. Civ. P. 8(d)(3) ("A party may state as many separate claims or defenses as the party has regardless of consistency."); *Gregory v. Daly*, 243 F.3d 687, 701 n.12 (2d Cir. 2001) (holding that it was unnecessary to determine at the motion to dismiss stage whether the plaintiff could maintain claims that she was terminated based on both retaliatory and discriminatory intent because the plaintiff could maintain retaliation and discrimination claims "based on mutually exclusive inferences from the facts alleged").

memos," (Am. Compl. 8–9, 11–12, 16).[23]

An "adverse employment action" is "a materially adverse change in the terms and conditions of employment." *See Davis v. N.Y.C. Dep't of Educ.*, 804 F.3d 231, 235 (2d Cir. 2015) (quoting *Sanders v. N.Y.C. Human Res. Admin.*, 361 F.3d 749, 755 (2d Cir. 2004)). There is "no bright-line rule to determine whether a challenged employment action is sufficiently significant to serve as the basis for a claim of discrimination." *Id.* (citing *Richardson v. N.Y. State Dep't of Corr. Serv.*, 180 F.3d 426, 437, 446 (2d Cir. 1999), *abrogated on other grounds by Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006)). However, in the context of Title VII discrimination claims, the Second Circuit has stated that "[e]xamples of materially adverse changes include 'termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished

---

[23] Plaintiff's allegations that his office lacked air conditioning without any factual allegations that the lack of air conditioning materially affected Plaintiff's ability to perform his job is not a material adverse employment action. (Am. Compl. 7; Pl. Opp'n 24.) Although Plaintiff alleges he has asthma and chronic obstructive pulmonary disease, which made it more difficult for him to breathe without air conditioning, (Am. Compl. 7), without facts alleging that the difficulty in breathing impacted his ability to perform his job duties and responsibilities, he has not sufficiently alleged an adverse action. *See, e.g.*, *Guzman v. City of New York*, No. 06-CV-5832, 2010 WL 4174622, at *15 (E.D.N.Y. Sept. 30, 2010) (finding that assigning a pregnant plaintiff to a post that lacked air conditioning and an adjoining bathroom did not constitute an adverse employment action under Title VII because "[a]n assignment to work at an inferior facility, without more, does not constitute an adverse employment action"); *Reckard v. County of Westchester*, 351 F. Supp. 2d 157, 160–61 (S.D.N.Y. 2004) (finding that assigning the plaintiff to work on three or four occasions at non air-conditioned jails when plaintiff had health restriction requiring an air-conditioned environment did not constitute an adverse employment action even under the more lenient retaliation standard); *cf. Singer v. Tuffey*, 66 F. App'x 232, 236 (2d Cir. 2003) (holding that a reasonable juror might conclude that relocation to an undesired office in the "subbasement" when "considered together" with a reduction of duties and stripped title was an adverse change in employment for purposes of a retaliation claim). For this reason, the Court declines to consider NYCHA's argument that Plaintiff is precluded from arguing that he was denied a cooling option for his office. (Def. Mem. 12–14.) Nevertheless, the Court considers Plaintiff's allegation that he was denied air conditioning in discussing his hostile work environment claim.

material responsibilities, or other indices . . . unique to a particular situation.'"  *Terry v. Ashcroft*, 336 F.3d 128, 138 (2d Cir. 2003) (quoting *Galabya v. N.Y.C. Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000)); *see, e.g.*, *Robinson v. Dibble*, 613 F. App'x 9, 12 (2d Cir. 2015) (noting that the plaintiff's termination constituted an "adverse employment action").  Conduct that is a "mere inconvenience" does not rise to the level of an adverse employment action.  *Sanders*, 361 F.3d at 755 ("To be materially adverse, a change in working conditions must be more disruptive than a mere inconvenience or an alteration of job responsibilities." (citations and internal quotation marks omitted)).

### A. Non-secretarial work assignments and failure to authorize pay for overtime work

Plaintiff's allegations that Bazelais assigned him non-secretarial assignments to complete housing assistant work, which required him to work overtime, and then refused to authorize his overtime pay, (Am. Compl. 10, 17–18; Pl. Opp'n 14–15), sufficiently state adverse employment actions.[24]

A "disproportionately heavy workload" may be sufficient to establish a materially

---

[24]  Although Plaintiff does not specify precisely when he received non-secretarial assignments or was denied overtime pay, he alleges that he was assigned "excessive assignments" when Bazelais joined Unity Plaza in January of 2012, (Pl. Opp'n 10), and suggests that Bazelais regularly assigned him non-secretarial assignments and refused to authorize his overtime pay during the course of his employment at Unity Plaza, which ended on July 12, 2013. (*See* Pl. Opp'n 15; Am. Compl. 10; *id.* at 17.)  Thus, the Court liberally construes Plaintiff's allegations to suggest that Plaintiff was given non-secretarial assignments and denied overtime during or after July of 2012, making his claim timely.  *See, e.g.*, *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 80 (2d Cir. 2015) (finding claim that plaintiff was "assigned extra work on a discriminatory or retaliatory basis" was not timebarred and concluding that "[w]hile the [c]omplaint is not precise in terms of dates, it seems to suggest an ongoing practice" and each incident constituted a separate actionable unlawful employment practice); *DeVore v. Neighborhood Hous. Servs. Of Jamaica Inc.*, No. 15-CV-6218, 2017 WL 1034787, at *11 n.18 (E.D.N.Y. Mar. 16, 2017) ("[B]ecause Plaintiff is *pro se*, and has provided some dates that tend to support an inference of causation, the Court does not find the lack of precise dates to be fatal to Plaintiff's retaliation claim at this stage.").

adverse employment action where the assigned work is outside of the employee's regular duties or against the employer's policy and results in a material increase of work that is not compensated. *See Vega*, 801 F.3d at 88 (holding the plaintiff plausibly alleged a discrimination claim where he was assigned a "disproportionate workload" that violated the employer's policy and "material[ly] increase[d] [] his responsibilities without additional compensation"); *Feingold v. New York*, 366 F.3d 138, 152–53 (2d Cir. 2004) (holding that a plaintiff faced an adverse employment action when he was "assigned a heavier docket of cases as a result of discriminatory intent," and the employer's stated reason for the assigning scheme was contradicted by the employer's policy); *cf. Grant v. N.Y. State Office for People with Developmental Disabilities*, No. 12-CV-4729, 2013 WL 3973168, at *7 (E.D.N.Y. July 30, 2013) (dismissing a Title VII discrimination claim for failure to establish an adverse employment action because the assignments complained of by the plaintiff were within the duties that someone with the plaintiff's title was "expected to perform," and there was no claim that "such work assignments negatively affected his pay, hours or position").

Failure to pay overtime wages for additional hours worked may also be an adverse employment action. *See generally Annis v. County of Westchester*, 136 F.3d 239, 248 (2d Cir. 1998) (holding that abolishing regular overtime pay so as to deprive one employee of such pay was an adverse employment action under section 1983); *Damon v. United Parcel Serv.*, No. 04-CV-746, 2010 WL 4340828, at *7 (W.D.N.Y. Nov. 2, 2010) (recognizing that the denial of overtime pay may rise to the level of a material change in the terms and conditions of employment).

Thus, Plaintiff plausibly alleges that the non-secretarial assignments and failure to authorize his overtime pay were adverse employment actions. Plaintiff was assigned tasks

outside of his normal duties as a secretary that should have been performed by a housing assistant, including managing folders, preparing leases, updating tenant information and database information, and preparing copies of tenants' folders for court. (Pl. Opp'n 15.) Plaintiff's normal secretarial duties included answering telephone calls, assisting visitors with sign-in and information requests, employee timekeeping, and creating and processing tenant "work order tickets." (Pl. Opp'n 14.) Plaintiff also alleges that the non-secretarial assignments resulted in a material increase in work without commensurate compensation. Plaintiff was unable to complete his regularly assigned tasks because of the housing assistant work, he was reprimanded for that failure, and, Bazelais refused to authorize Plaintiff's overtime pay for the overtime hours he worked in order to complete the non-secretarial assignments, (Am. Compl. 17–18; Pl. Opp'n 14–15). *See Vega*, 801 F.3d at 88; *cf. Kelly v. N.Y.S. Office of Mental Health*, 200 F. Supp. 3d 378, 396–97 (E.D.N.Y. 2016) (finding no alleged adverse action where the plaintiff alleged she was "given additional work" because she failed to allege the nature of the work or that it "was outside of her general responsibilities"). Bazelais' failure to authorize Plaintiff's overtime pay is also a separate adverse action apart from the non-secretarial assignments.[25] *See Austin v. Ford Models, Inc.*, 149 F.3d 148, 151, 153–54 (2d Cir. 1998) (reversing a district court's dismissal of the plaintiff's Title VII race-discrimination claim where she alleged that, among other things, "she had to perform unnecessary clerical work involving extra hours without additional monetary compensation, while other, non-black, employees were receiving overtime pay for their extra work"), *abrogated on other grounds by Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002).

### B. Negative evaluations, misconduct memos and write-ups

Plaintiff's allegations of "unjust[,]" "negative performance evaluations and misconduct

---

[25] The Court assumes for the purpose of this motion that Plaintiff was entitled to receive overtime pay for the additional work, although neither party has addressed this issue.

memos," and "write-ups," (Am. Comp. 8–9, 11–12, 14, 16), do not amount to adverse employment actions.

Negative written evaluations or reprimands are adverse employment actions if they affect an employee's terms and conditions of employment, such as promotion, wages, or termination. *Farina v. Branford Bd. of Educ.*, 458 F. App'x 13, 17 (2d Cir. 2011) (holding, in the context of an ADA claim, that "[w]hile negative employment evaluation letters, or reprimands may be considered adverse employment actions, here there was no proof that this evaluation had any effect on the terms and conditions of [plaintiff's] employment" (citations and internal quotation marks omitted)); *see also Weeks v. New York State (Div. of Parole)*, 273 F.3d 76, 86 (2d Cir. 2001) (holding that a "notice of discipline" and "counseling memo" was not an adverse action because the plaintiff did "not describe its effect or ramifications, how or why the effect would be serious, [or] whether it went to any file"), *abrogated on other grounds by Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002); *Kalola v. Int'l Bus. Machs. Corp.*, No. 13-CV-7339, 2015 WL 861718, at *7 (S.D.N.Y. Feb. 3, 2015) (finding that negative performance reviews that led to probation and then termination were adverse employment actions).

Plaintiff fails to allege that the "write ups" had any material effect on his employment. Plaintiff alleges that Harvey, a "former" housing assistant, "wrote" Plaintiff up and, on one occasion, filed a police report that became part of Plaintiff's employment folder, but Plaintiff fails to allege how these actions adversely affected his employment.[26]  *See, e.g., Herling v.*

---

[26]  Moreover, even if the negative evaluations, "write ups" or police report Harvey filed could be considered adverse employment actions, Plaintiff's claim as to these actions nevertheless fails because he does not allege that Harvey or anyone else who disciplined him or wrote a negative evaluation about him did so for discriminatory reasons. *See Vega*, 801 F.3d at 87 (holding that at the pleadings stage, "a plaintiff must allege that the employer took adverse action against her at least in part for a discriminatory reason, and she may do so by alleging facts

*N.Y.C. Dep't of Educ.*, No. 13-CV-5287, 2014 WL 1621966, at *7 (E.D.N.Y. Apr. 23, 2014) (dismissing a discrimination claim based on allegations that "write ups" and other "disciplinary actions [were] taken against him" because the plaintiff failed to allege that they were "accompanied by any negative consequences to the conditions of [the plaintiff's] employment"); *Henry v. N.Y.C. Health & Hosp. Corp.*, 18 F. Supp. 3d 396, 407 (S.D.N.Y. Mar. 10, 2014) (finding allegations that the defendants "wr[ote] [the plaintiff] up on false charges of sleeping at work," did not state an adverse employment action because the amended complaint did not include any allegations that the plaintiff received "any punishment as a result of these purportedly false charges, let alone that such punishment 'affected her compensation, promotion opportunities, or any other term, privilege or condition of her employment'" (citation omitted)).

Similarly, regarding the negative employment evaluations and misconduct memos, Plaintiff fails to show how they materially affected the terms and conditions of his employment. Plaintiff alleges that he "unjustly received negative performance evaluations and misconduct memos" and was "repeatedly written up for trivial incidents, which were often tweaked or fabricated" because he "was made to look like a [s]cary Black man by NYCHA." (Am. Compl. 8–12, 14.) Plaintiff does not describe the circumstances that led to the negative evaluations or memos or any repercussions as a result of the negative evaluations and memos. The Court therefore cannot infer that the negative evaluations and memos materially affected Plaintiff's employment.[27] *See, e.g., John v. Dep't of Educ. of the City of N.Y.*, No. 15-CV-2407, 2016 WL

_____

that directly show discrimination or facts that indirectly show discrimination by giving rise to a plausible inference of discrimination" (citing *Littlejohn*, 795 F.3d at 310)).

[27] Even if the Court assumed that the "misconduct memos" are the same "counseling memoranda" in Plaintiff's personnel record that Gold referenced in the Section 75 Report and Recommendation, (Section 75 Report and Recommendation at 21, annexed to Lippman Decl. as

35

4539209, at *3 n.2 (E.D.N.Y. Aug. 30, 2016) (dismissing claims for failure to allege an adverse

employment action where the plaintiff asserted, among other things, that she had been the subject

of "biased memos, letters to the file and discipline"); *Jackson v. N.Y.S. Office of Mental Health*,

No. 11-CV-7832, 2012 WL 3457961, at *1–2 (S.D.N.Y. Aug. 13, 2012) ("[The plaintiff's]

conclusory assertion that his negative performance evaluation could lead to another poor review

does not constitute an adverse employment action because [the plaintiff] fails to allege that the

negative evaluation adversely affected his compensation, benefits, responsibilities, job title, or

otherwise affected the terms and conditions of his employment." (citing *Siddiqi v. N.Y.C. Health

& Hosps. Corp.*, 572 F. Supp. 2d 353, 367 (S.D.N.Y. 2008))).

Accordingly, only Plaintiff's termination, the non-secretarial assignments beyond the

scope of his duties and responsibilities, and the failure to authorize his overtime pay constitute

adverse employment actions. The Court next considers whether Plaintiff plausibly alleges an

inference of discriminatory intent as to these actions.

## 2. Inference of discrimination

Plaintiff alleges that Bazelais was motivated by gender animus because Bazelais told

Plaintiff on "several occasions" that "this is a woman's job" and as a man "[he] could not do a

woman's job as well as a woman," (Am. Compl. 9); told him nearly every time she spoke to him

about his work that he did not "belong" at Unity Plaza, (Pl. Opp'n 11); told him on "other

occasions," "why don't you apply for another job?," "this is a woman's job," "this is not the job

for you," (*id.*); and did not assign female secretaries the non-secretarial housing assistant

assignments she assigned to Plaintiff, (Am. Compl. 7; Pl. Opp'n 14–15).

---

Ex. C), such that they contributed to his termination, Plaintiff's failure to allege the
circumstances under which Plaintiff received the misconduct memos precludes the Court from
inferring that the memos were issued with a discriminatory motive.

To survive a motion to dismiss an employment discrimination claim, a plaintiff must allege "facts that directly show discrimination or facts that indirectly show discrimination by giving rise to a plausible inference of discrimination." *Kpaka v. City Univ. of N.Y.*, --- F. App'x ---, --- 2017 WL 3866642, at *1 (2d Cir. Sept. 5, 2017) (quoting *Vega*, 801 F.3d at 87). An inference of discrimination at the pleading stage can arise from "[t]he fact that a plaintiff was replaced by someone outside the protected class," *Littlejohn*, 795 F.3d at 313, or "actions or remarks made by decisionmakers that could be viewed as reflecting a discriminatory animus," *see Chertkova v. Conn. Gen. Life Ins. Co.*, 92 F.3d 81, 91 (2d Cir. 1996); *Franchino v. Terence Cardinal Cook Health Care Ctr., Inc.*, --- F. App'x ---, --- 2017 WL 2392473, at *2 (2d Cir. June 2, 2017) ("An inference of discrimination can arise from circumstances including, but not limited to, the employer's criticism of the plaintiff's performance in ethnically degrading terms; or its invidious comments about others in the employee's protected group; or the more favorable treatment of employees not in the protected group; or the sequence of events leading to the plaintiff's discharge." (quoting *Littlejohn*, 795 F.3d at 312)).

Verbal comments may also raise an inference of discriminatory motivation where a plaintiff alleges a nexus between the remarks and the alleged adverse action. *See Schreiber v. Worldco, LLC*, 324 F. Supp. 2d 512, 518 (S.D.N.Y. 2004). "[R]emarks made by someone other than the person who made the decision adversely affecting the plaintiff may have little tendency to show that the decision-maker was motivated by the discriminatory sentiment expressed in the remark." *Tomassi v. Insignia Fin. Grp., Inc.*, 478 F.3d 111, 115 (2d Cir. 2007) ("[T]he more remote and oblique the remarks are in relation to the employer's adverse action, the less they prove that the action was motivated by discrimination."), *abrogated on other grounds by Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167 (2009); *see also Ostrowski v. Atl. Mut. Ins. Cos.*, 968 F.2d

171, 182 (2d Cir. 1992) (describing remarks as "stray" when made "in the workplace by persons who are not involved in the pertinent decisionmaking process").

To determine whether a comment is probative of intent to discriminate or whether it is a non-probative "stray remark," a court considers the following factors:

> (1) who made the remark, i.e. a decisionmaker, a supervisor, or a low-level co-worker; (2) whether the remark was made in relation to the employment decision at issue; (3) the content of the remark, i.e., whether a reasonable juror could view the remark as discriminatory; and (4) the context in which the remark was made, i.e., whether it was related to the decisionmaking process.

*Wanamaker v. Westport Bd. of Educ.*, 899 F. Supp. 2d 193, 208 (D. Conn. 2012) (quoting *Schreiber*, 324 F. Supp. 2d at 518–19); *see also Henry v. Wyeth Pharm., Inc.*, 616 F.3d 134, 149 (2d Cir. 2010) (applying the factors and noting that "[t]he district courts in this circuit have developed a standardized approach . . . [i]n determining whether a remark is probative." (citing, *inter alia*, *Schreiber*, 324 F. Supp. 2d at 518)); *Luka*, --- F. Supp. 3d at ---, 2017 WL 2839641, at *6 (applying the factors to determine whether the plaintiff adequately alleged discriminatory animus on a motion to dismiss).

Here, Bazelais' comments are probative of her discriminatory intent, which motivated her accusations that led to the termination of Plaintiff's employment and the assignment of non-secretarial work to Plaintiff without commensurate compensation. Bazelais was Plaintiff's supervisor, and, according to Plaintiff, Bazelais assigned Plaintiff non-secretarial work, denied Plaintiff overtime pay and accused Plaintiff of becoming angry and agitated in response to Bazelais reprimanding him for failing to photocopy a check, which accusations contributed to the termination of his employment. Although, none of the comments were made explicitly in relation to any of the alleged adverse actions, a reasonable juror could find the remarks that Plaintiff was performing a "woman's job," and that he "could not do a woman's job as well as a

woman," to be discriminatory. *See, e.g.*, *Conforti v. Sunbelt Rentals, Inc.*, 201 F. Supp. 3d 278, 299 (E.D.N.Y. 2016) (finding a supervisor's comments that the "position of [a]ssistant [m]anager was too powerful for women," the plaintiff should "assume the submissive role expected of females and play nicely within the boys' club," and that the idea of a female top executive running the company "disgust[ed]" another supervisor, when viewed alongside allegations of disparate treatment of women, gave rise to a plausible inference of gender discrimination).

Moreover, the timing and implied context of the remarks suggest that there was a connection between the comments, made on several occasions during Plaintiff's employment at Unity Plaza, and the adverse actions. Bazelais' frequent comments during the time she supervised Plaintiff at Unity Plaza between January of 2012 and July 12, 2013, (Am. Compl. 7; Pl. Opp'n 10, 22), and her actions of delegating Plaintiff non-secretarial assignments, denying his overtime requests and accusing him of misconduct that led to his termination, suggest that she was motivated by discriminatory animus. *See Yang v. Dep't of Educ. of the City of N.Y.*, No. 14-CV-7037, 2016 WL 4028131, at *7–8 (E.D.N.Y. July 26, 2016) (finding that allegations of frequent comments made by a supervisor pointing out that the plaintiff was Chinese and commenting on his accent were sufficient to give rise to an inference that national origin animus may have played a part in the plaintiff's termination even though it was "unclear precisely" when the comments were made); *cf. Maqsood v. Bell Sec., Inc.*, 249 F. App'x 229, 230 (2d Cir. 2007) ("Here, certain comments were allegedly made by [the defendant's] employees approximately two years before [the plaintiff's] termination, and were thus 'remote' from any adverse employment action. Moreover, such comments were isolated, ambiguous, and insufficient to support a finding of discrimination based on national origin or religion."); *Tomassi*, 478 F.3d at 115 ("[T]he more remote and oblique the remarks are in relation to the employer's adverse

action, the less they prove that the action was motivated by discrimination.").

In addition to the probative value of Bazelais' statements, Plaintiff also alleges that while Bazelais gave him non-secretarial assignments, she did not give the female secretaries similar assignments, which further supports the inference that Bazelais treated Plaintiff adversely because of his gender. *See, e.g.*, *Ramos v. Marriott Int'l, Inc.*, 134 F. Supp. 2d 328, 338–39 (S.D.N.Y. 2001) (finding an inference of discrimination from comments such as, "if you wanted to do a man's job, you better make sure you have what it takes in your pants to do it" and "never send a woman to do a man's job," where the comments were made six months before the plaintiff's termination and the plaintiff was treated less favorably than similarly situated male employees).

Accordingly, Plaintiff has alleged the necessary elements of a gender discrimination claim under Title VII and the NYSHRL based on Plaintiff's termination,[28] the non-secretarial work assignments and the denial of overtime pay for the overtime hours Plaintiff worked.

### iv. Title VII and NYSHLR hostile work environment claims

Plaintiff alleges that Bazelais created a hostile work environment at NYCHA by consistently harassing him on the basis of his gender. Plaintiff alleges multiple acts and

---

[28] Plaintiff fails to state NYSHRL or NYCHRL claims against Turner or Agbai because he does not allege that either displayed gender animus, but only that Bazelais used them to further her discriminatory purpose. NYCHA may also be liable. Under a "cat's paw" theory of liability, an employer may be held liable for unlawful retaliation because of an "employee who 'manipulates' an employer into acting as mere 'conduit' for his retaliatory intent." *Vasquez v. Empress Ambulance Serv., Inc.*, 835 F.3d 267, 273 (2d Cir. 2016); *see also Staub v. Proctor Hosp.*, 562 U.S. 411, 421 (2011) (holding that an employer may be held liable for discrimination based on the discriminatory animus of an employee other than the ultimate decisionmaker who intended, and succeeded, by his or her conduct, to proximately cause the adverse action). NYCHA may be liable under a "cat's paw" theory of liability for Bazelais' discrimination even though Plaintiff did not allege that NYCHA itself decided to terminate his employment based on gender animus. As Plaintiff alleges, Bazelais, motivated by gender animus, caused Plaintiff's termination through her accusations and those of Turner and Agbai, and used NYCHA as the conduit for her discriminatory intent.

conditions that contributed to the hostile work environment, including: (1) that his office did not

have a window or air conditioning, while those of female secretaries did, (Am. Compl. 7);

(2) Bazelais twice cancelled his work orders to prevent him from obtaining air conditioning, (*id.*

at 9; Pl. Opp'n 9); (3) Bazelais made regular comments that as a man, Plaintiff was ill-suited for

his job because it was a "woman's job," and told Plaintiff that he should get a new job, (Am.

Compl. 9; Pl. Opp'n 11); (4) Bazelais told Plaintiff that his work performance was sub-par

compared to previous female secretaries and told Plaintiff that he did not belong in the office,

(Pl. Opp'n 4, 11); and (5) Bazelais only assigned Plaintiff — the sole male secretary at Unity

Plaza — non-secretarial work assignments, which caused him to appear incompetent because  he

failed to complete his regularly assigned duties, (Am. Compl. 10, 17–18; Pl. Opp'n 14–15).[29]

---

[29]  In Plaintiff's opposition to NYCHA's motion to dismiss, Plaintiff includes allegations
about "derogatory comments" coworkers made regarding his sexuality and his illness starting in
or around January of 2012 at Unity Plaza and starting in August of 2013 at Garvey-Prospect
Plaza. (Pl. Opp'n 13, 19.)  The Court declines to consider Plaintiff's newly-raised protected
characteristics regarding his sexual orientation and disability as a basis for Title VII liability
because, as NYCHA argues, neither claim was raised in the April 2013 Charge or the June 2015
supplemental filing and the claims are therefore unexhausted.  (Def. Reply 2; EEOC Docs. 12.)
*See Williams v. N.Y.C. Hous. Auth.*, 458 F.3d 67, 69 (2d Cir. 2006) ("Before an individual may
bring a Title VII suit in federal court, the claims forming the basis of such a suit must first be
presented in a complaint to the EEOC or the equivalent state agency.").
    However, because there is no exhaustion requirement under NYSHLR and NYCHRL,
*Ross-Caleb v. City of Rochester*, 512 F. App'x 17, 17–18 (2d Cir. 2013), and Plaintiff appears to
allege that at least some of the discrimination occurred within three years of filing this action, the
Court will allow Plaintiff to submit a detailed affidavit to the Court specifying the basis for his
sexual orientation and disability discrimination claims.  *See Dingle v. Bimbo Bakeries
USA/Entenmann's*, 624 F. App'x 57, 58 n.1 (2d Cir. 2015) ("The NYCHRL and NYSHRL
expressly protect against discrimination based on both perceived as well as actual sexual
orientation."); *Gioia v. Forbes Media LLC*, 501 F. App'x 52, 55 (2d Cir. 2012) ("The NYSHRL
and NYCHRL make it unlawful, among other things, for an employer to discharge an employee
because of his or her disability." (first citing N.Y. Exec. Law § 296(1); and then citing N.Y.C.
Admin. Code § 8–107))).  NYCHA will have the opportunity to respond to the sexual orientation
and disability claims while the remainder of Plaintiff's case moves forward.  Plaintiff must allege
the dates on which the incidents occurred and include all specific factual allegations in support of
his claims for sexual orientation and disability discrimination under NYSHRL and NYCHRL.

NYCHA argues that Plaintiff's allegations fail to show any discriminatory animus and that the conduct he alleges is insufficiently severe or pervasive to state a hostile work environment claim. (Def. Mem. 15–18.)

To state a hostile work environment claim, a plaintiff must "show that 'the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Shultz v. Shearith*, --- F.3d ---, ---, 2017 WL 3427130, at *7 (2d Cir. Aug. 10, 2017) (quoting *Rivera v. Rochester Genesee Reg'l Transp. Auth.*, 743 F.3d 11, 20 (2d Cir. 2014)); *Littlejohn*, 795 F.3d at 320–21 (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)). "This standard has both objective and subjective components: the conduct complained of must be severe or pervasive enough that a reasonable person would find it hostile or abusive, and the victim must subjectively perceive the work environment to be abusive." *Littlejohn*, 795 F.3d at 321 (quoting *Raspardo v. Carlone*, 770 F.3d 97, 114 (2d Cir. 2014)). The Second Circuit has cautioned that:

> While the standard for establishing a hostile work environment is high, we have repeatedly cautioned against setting the bar too high, noting that [w]hile a mild, isolated incident does not make a work environment hostile, the test is whether the harassment is of such quality or quantity that a reasonable employee would find the conditions of her employment *altered for the worse*.

*Terry*, 336 F.3d at 148 (alteration in original) (citation and internal quotation marks omitted).

A court should consider the totality of the circumstances and factors such as "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or

---

*See Petty v. City of New York*, 633 F. App'x 52, 53 (2d Cir. 2016) ("Claims under the NYSHRL and NYCHRL are subject to a three-year statute of limitations from the date that the claims accrue." (first citing N.Y. C.P.L.R. § 214(2); then citing N.Y.C. Admin. Code § 8–502(d); and then citing *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 238 (2d Cir. 2007))).

humiliating, or a mere offensive utterance; and whether it unreasonably interferes with [the] employee's work performance." *Staten v. N.Y.C.*, 653 F. App'x 78, 80 (2d Cir. 2016) (quoting *Feingold*, 366 F.3d at 149); *Patane v. Clark*, 508 F.3d 106, 113 (2d Cir. 2007). In evaluating whether a plaintiff states a hostile work environment claim, the court must consider facially neutral conduct that might "bolster a harassment claim" when the facially neutral conduct is by the same individual who engaged in "overt[]" discrimination. *See Daniel v. T&M Prot. Res., LLC*, 689 F. App'x 1, 3 (2d Cir. 2017) (citing *Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 547–48 (2d Cir. 2010))(remanding with instructions to the district court to consider facially neutral incidents of harassment in analyzing the plaintiff's hostile work environment claim).

Assessing in totality the alleged conduct, the relevant factors and the Second Circuit's caution against "setting the [hostile work environment] bar too high," *Terry*, 336 F.3d at 148, the Court finds that Plaintiff states a hostile work environment claim.

As discussed above, Plaintiff adequately alleges that the actions taken against him were motivated by Bazelais' gender-based animus, and that they occurred over the approximately eighteen-month period in which Bazelais supervised him. (*See* Am. Compl. 9; Pl. Opp'n 11); *cf. Alfano*, 294 F.3d at 380 (explaining that actions "too few, too separate in time, and too mild" are insufficient to create a hostile work environment).

Bazelais also used her management position to create an atmosphere designed to frustrate Plaintiff's work performance. At the very least, Bazelais' comments were humiliating and "calculated to interfere" with Plaintiff's work. *See Yang*, 2016 WL 4028131, at *10 (finding that the plaintiff's supervisor had acted in ways "calculated to interfere" with her work as a school psychologist when the supervisor made frequent derogatory comments about the plaintiff's accent, wrote biased evaluations of her performance, moved her to a new office in a location that

made it more difficult to complete her tasks and assigned her a disproportionately heavy and difficult workload).  Bazelais gave Plaintiff non-secretarial work assignments, reprimanded Plaintiff for failing to complete his regularly assigned secretarial duties, perpetuated the perception that Plaintiff was incompetent at his job, and cancelled his work orders to obtain air conditioning in his office.  (Am. Compl. 9–10, 17–18; Pl. Opp'n 4, 9, 11, 14–15.)  Together, it is more than plausible that these actions had a "real social impact" on Plaintiff's work environment, as he was the only male secretary at the Unity Plaza office.  (Am. Compl. 7); *see Oncale v. Sundowner Offshore, Servs. Inc.*, 523 U.S. 75, 81, (1998) (explaining that the "inquiry [into a harassment claim] requires careful consideration of the social context in which particular behavior occurs and is experienced by its target . . . .  The real social impact of workplace behavior often depends on a constellation of surrounding circumstances, expectations, and relationships which are not fully captured by a simple recitation of the words used or the physical acts performed.").

Under these circumstances, Plaintiff adequately alleges an environment at Unity Plaza in which he was subject to "harassment . . . of such quality or quantity that a reasonable employee would find the conditions of [his] employment altered for the worse."  *Patane*, 508 F.3d at 113; *Terry*, 336 F.3d at 148; *see, e.g.*, *Raniola v. Bratton*, 243 F.3d 610, 621 (2d Cir. 2001) (holding that there were triable issues of fact as to whether the plaintiff was subjected to a hostile work environment where, over a period of two-and-a-half years, the plaintiff was the recipient of "offensive sex-based remarks, disproportionately burdensome work assignments, workplace sabotage, and one serious public threat of physical harm").

Accordingly, viewing Plaintiff's allegations in totality, Plaintiff sufficiently alleges that he was subjected to a hostile work environment under Title VII and the NYSHRL.

### v. NYCHRL discrimination and hostile work environment claims

Plaintiff relies on the same factual allegations discussed above in support of his NYCHRL claims. NYCHA argues that Plaintiff's allegations fail to state a claim even under the more lenient NYCHRL discrimination standard. (Def. Mem. 18–19, 20–21.)

Because NYCHRL claims are scrutinized under a more lenient standard than claims under Title VII and the NYSHRL, the Court analyzes Plaintiff's NYCHRL claims separately. *See Chauca v. Abraham*, 841 F.3d 86, 91 (2d Cir. 2016) ("[T]he City Council instructed that "[t]he provisions of [the NYCHRL] shall be construed liberally . . . regardless of whether federal or New York State civil and human rights laws, including those laws with provisions comparably-worded to provisions of [the NYCHRL], have been so construed."); *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 109 (2d Cir. 2013) ("[C]ourts must analyze NYCHRL claims separately and independently from any federal and state law claims, construing the NYCHRL's provisions 'broadly in favor of discrimination plaintiffs, to the extent that such a construction is reasonably possible.'" (citations omitted)).

Under the NYCHRL, a hostile work environment claim is a form of a discrimination claim, and both claims are analyzed under the same standard. *Bacchus v. N.Y.C. Dep't of Educ.*, 137 F. Supp. 3d 214, 246 (E.D.N.Y. 2015) ("Because claims for hostile work environment and discrimination are governed by the same provision of the NYCHRL, they are analyzed under the same standard." (citing *Russo v. N.Y. Presbyterian Hosp.*, 972 F. Supp. 2d 429, 449–50 (E.D.N.Y. 2013))).

"To state a claim for discrimination under the NYCHRL, a plaintiff must only show differential treatment of any degree based on a discriminatory motive; 'the NYCHRL does not require either materially adverse employment actions or severe and pervasive conduct.'" *Gorokhovsky v. N.Y.C. Hous. Auth.*, 552 F. App'x 100, 102 (2d Cir. 2014) (quoting *Mihalik*, 715

F.3d at 114); *Medcalf v. Thompson Hine LLP*, 84 F. Supp. 3d 313, 329 (S.D.N.Y. 2015) (same); *see also Mihalik*, 715 F.3d at 110 ("[T]he conduct's severity and pervasiveness are relevant only to the issue of damages." (citation omitted)).  A plaintiff only needs to allege that he was treated "differently from others in a way that was more than trivial, insubstantial, or petty." *Medcalf*, 84 F. Supp. 3d at 329 n.18 (citing *Kellman v. Metro. Transp. Auth.*, 8 F. Supp. 3d 351, 379 (S.D.N.Y. 2014)); *see also Bright-Asante v. Saks & Co., Inc.*, --- F. Supp. 3d ---, ---, 2017 WL 1064890, at *8 (S.D.N.Y. Mar. 16, 2017) ("[T]o establish liability under the NYCHRL, 'the plaintiff need only show differential treatment — that she is treated 'less well' — because of a discriminatory intent.'" (citation omitted)).

In the context of an NYCHRL claim for gender discrimination, a plaintiff need only show "unwanted gender-based conduct" to succeed.  *Bermudez v. City of New York*, 783 F. Supp. 2d 560, 579 (S.D.N.Y. 2011) (quoting *Williams v. N.Y.C. Hous. Auth.*, 872 N.Y.S.2d 27, 38 (App. Div. 2009)).  Even under this more forgiving pleading standard, however, a plaintiff must still plausibly allege that she was treated less well "at least in part '*because of* her [belonging to a protected class].'"  *Mihalik*, 715 F.3d at 110; *see also Bright-Asante*, --- F. Supp. 3d at ---, 2017 WL 1064890, at *8 ("Nevertheless, a plaintiff must still 'plead facts sufficient to support an inference that he has been treated less well at least in part because of a protected trait." (quoting *Bell v. McRoberts Protective Agency, Inc.*, No. 15-CV-0963, 2016 WL 7192083, at *5 (S.D.N.Y. Dec. 12, 2016))).

### 1.  Discrimination

Plaintiff states a discrimination claim based on substantially the same allegations that support his Title VII and NYSHRL gender discrimination claims: he was terminated, assigned non-secretarial work and denied overtime pay, and this differential treatment was because of Bazelais' gender-based animus.  Therefore, Plaintiff also states a claim under the more lenient

NYCHRL standard. *See Mihalik*, 715 F.3d at 109 (discussing the New York City Council's 2005 amendments to the NYCHRL as having created a "'one-way ratchet,' by which interpretations of state and federal civil rights statutes can serve only 'as a floor below which the City's Human Rights law cannot fall'" (quoting *Loeffler v. Staten Island Univ. Hosp.*, 582 F.3d 268, 278 (2d Cir. 2009))).

Plaintiff's allegations of negative performance evaluations, misconduct memos and "write-ups" fail to state a claim under NYCHRL for substantially the same reasons that they fail to state a claim under Title VII and the NYSHRL. Although the Court determined that Plaintiff's negative performance evaluations, misconduct memos and "write-ups" were not adverse actions under Title VII and NYSHRL, the Court alternatively found that Plaintiff fails to allege the actions against him were taken, at least in part, *because of* a discriminatory motive. Plaintiff's NYCHRL claim fails for the same reason. *See Mihalik*, 715 F.3d at 110 (noting that a plaintiff "must show that []he has been treated less well at least in part 'because of [his] gender.'" (citation omitted)); *Soloviev v. Goldstein*, 104 F. Supp. 3d 232, 250 (E.D.N.Y. 2015) (dismissing a NYCHRL claim because the plaintiff failed to allege that his termination was caused by a discriminatory motive).

### 2. Hostile work environment

Plaintiff sufficiently states a hostile work environment claim under the NYCHRL for the same reasons that he sufficiently states a claim under Title VII and the NYSHLR. Plaintiff has alleged that he was harassed in a severe and pervasive manner, and therefore he necessarily meets his burden, under the NYCHRL, to show that he was treated "less well" because of his protected status. *See Mihalik*, 715 F.3d at 110 ("Under [the NYCHRL], the conduct's severity and pervasiveness are relevant only to the issue of damages." (citation omitted)).

Accordingly, the Court denies NYCHA's motion to dismiss Plaintiff's NYCHLR

discrimination and hostile work environment claims.

### vi. Title VII, NYSHRL and NYCHRL retaliation claims

Plaintiff alleges that after Bazelais saw him complete his April 2013 Charge and told him, "I see what you're doing, and I know what I can do," Bazelais accused him of misconduct and also encouraged Turner and Agbai to accuse Plaintiff of misconduct, which led to his termination. (Am. Compl. 12–13; Pl. Opp'n 18–19.) NYCHA argues that Plaintiff's retaliation claim fails because NYCHA did not know of Plaintiff's April 2013 Charge until NYCHA was served with notice of the charge in May of 2015, after Plaintiff's termination in September of 2014. (Def. Mem. 21–23.) NYCHA also argues that even if it was on notice of the April 2013 Charge, Plaintiff cannot allege but-for causation. (*Id.*)

Title VII prohibits retaliation against an employee who "has opposed any practice [that is] made an unlawful employment practice" under Title VII. 42 U.S.C. § 2000e-(3)(a). To establish a prima facie case of retaliation, a plaintiff must show: "(1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action." *Littlejohn*, 795 F.3d at 316 (quoting *Hicks v. Baines*, 593 F.3d 159, 164 (2d Cir. 2010)). As with other claims analyzed under the *McDonnell Douglas* framework, at the pleadings stage the allegations need only give "plausible support to the reduced prima facie requirements." *Id.* "[F]or a retaliation claim to survive . . . a motion to dismiss, the plaintiff must plausibly allege that: (1) [the] defendants discriminated — or took an adverse employment action — against [him], (2) 'because' he has opposed any unlawful employment practice." *Vasquez v. Empress Ambulance Serv., Inc.*, 835 F.3d 267, 271 (2d Cir. 2016) (quoting *Vega*, 801 F.3d at 90).

The parties do not dispute that Plaintiff engaged in protected activity when he filed an EEOC charge and that Plaintiff suffered an adverse employment action when his employment

was terminated. The Court addresses whether Defendants knew of Plaintiff's protected activity and whether there is a causal connection between the protected activity and his termination.[30]

### 1. NYCHA's knowledge of Plaintiff's protected activity

A plaintiff need only demonstrate that his employer has general corporate knowledge that a plaintiff engaged in a protected activity. *See Summa v. Hofstra Univ.*, 708 F.3d 115, 125–26 (2d Cir. 2013) (holding that "[n]othing more is necessary than general corporate knowledge that the plaintiff has engaged in a protected activity" (citation and internal quotation marks omitted)); *Papelino v. Albany Coll. of Pharmacy of Union Univ.*, 633 F.3d 81, 92 (2d Cir. 2011) ("Even if the agents who carried out the adverse action did not know about the plaintiff's protected activity, the 'knowledge' requirement is met if the legal entity was on notice. 'Neither this nor any other circuit has ever held that, to satisfy the knowledge requirement, anything more is necessary than general corporate knowledge that the plaintiff has engaged in a protected activity.'" (citations omitted)). In addition, a corporate officer's or a supervisor's knowledge of protected activity may be enough to impute general corporate knowledge of the activity to the entity. *See Zann Kwan v. Andalex Grp., LLC*, 737 F.3d 834, 844 (2d Cir. 2013) (holding that a discrimination complaint to an officer of the defendant-corporation imputed "general corporate knowledge of the plaintiff's protected activity" to the corporation).

Here, although NYCHA was not notified of the charge immediately after it was filed,

---

[30] Plaintiff refers to other "retaliation" in his filings but he does not specify the dates and nature of the retaliatory acts and whether the acts occurred after the filing of the April of 2013 Charge. (*See, e.g.*, Am. Compl. 11–12; Pl. Opp'n 24–25.) Because of these imprecise allegations, the Court considers only whether Plaintiff's termination was retaliatory. However, should the discovery process disclose that the other adverse employment actions discussed above were taken in retaliation for Plaintiff's filing of the April 2013 Charge, nothing in this Memorandum and Order will preclude the Court's consideration of those actions to support Plaintiff's retaliation claim.

Plaintiff nevertheless has sufficiently alleged that NYCHA was on notice of the charge because Bazelais — Plaintiff's supervisor and the individual accused of precipitating Plaintiff's termination — observed Plaintiff complete the EEOC charge and even commented to Plaintiff about it. (Pl. Opp'n 19.) Accepting these allegations as true, Bazelais was aware of Plaintiff's protected activity, and the Court therefore imputes general corporate knowledge to NYCHA.[31] *See, e.g.*, *Febrianti v. Worldwide*, No. 15-CV-635, 2016 WL 502027, at *3 (S.D.N.Y. Feb. 8, 2016) (finding that the plaintiff adequately alleged that the defendant knew of her protected activity where "at least some of her co-workers and supervisors were aware of her intention to file, and eventual filing of" state discrimination complaints); *Taylor v. Lenox Hill Hosp.*, No. 00-CV-3773, 2003 WL 1787118, at *7 (S.D.N.Y. Apr. 3, 2003) (finding an inference of general corporate knowledge that was sufficient to survive a motion to dismiss where the defendant's benefits coordinator had knowledge that the plaintiff had been in touch with the EEOC for advice, even though the record did not show that the benefits coordinator "ever relayed the conversation to anyone else") *aff'd*, 87 F. App'x 786 (2d Cir. 2004).

Thus, Plaintiff has sufficiently alleged that he engaged in a protected activity and that Bazelais and NYCHA were aware of the protected activity.

### 2. Causal connection

To sufficiently plead that a defendant-employer took an adverse employment action "because" a plaintiff opposed an unlawful employment practice, a plaintiff "must plausibly allege that the retaliation was a 'but for' cause of the employer's adverse action." *Vega*, 801

---

[31] NYCHA does not argue that Bazelais' observation of Plaintiff completing the EEOC charge is insufficient to impute knowledge to NYCHA, but instead argues that the allegation must be "disregarded and cannot be used to support Plaintiff's retaliation claim" because Plaintiff raised it for the first time in his opposition to the motion to dismiss. (Def. Reply 7.) As the Court has discussed, Plaintiff is a *pro se* litigant, and the Court will not hold him to formal pleading rules.

F.3d at 90 (citing *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. ---, ---, 133 S. Ct. 2517, 2533 (June 24, 2013)). But-for causation does not require that retaliation "was the only cause of the employer's action, but only that the adverse action would not have occurred in the absence of the retaliatory motive." *Id.* at 91 (quoting *Kwan*, 737 F.3d at 846); *Pothen*, 211 F. Supp. 3d at 497 (same).

A causal connection between the protected activity and the adverse action can be shown either "(1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory actions directed against the plaintiff by the defendant." *Littlejohn*, 795 F.3d at 319 (quoting *Gordon v. N.Y.C. Bd. of Educ.*, 232 F.3d 111, 117 (2d Cir. 2000)); *see also Terry*, 336 F.3d at 152 ("Proof of such a causal connection can be established directly through evidence of retaliatory animus directed against a plaintiff, or indirectly by showing that the protected activity was followed closely by discriminatory treatment . . . such as disparate treatment of fellow employees who engaged in similar conduct." (citation and internal quotation marks omitted)); *Raniola v. Bratton*, 243 F.3d 610, 625 (2d Cir. 2001) (same).

"[T]he requirement that [the plaintiff] show a causal connection between his complaints and his termination is satisfied by the temporal proximity between the two." *Feingold*, 366 F.3d at 156–57 (collecting cases); *see also Vega*, 801 F.3d at 90 ("A retaliatory purpose can be shown indirectly by timing: protected activity followed closely in time by adverse employment action." (first citing *Cifra v. Gen. Elec. Co.*, 252 F.3d 205, 217 (2d Cir. 2001); and then citing *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 110 (2d Cir. 2010))); *Chung v. City Univ. of N.Y.*, 605 F. App'x 20, 23 (2d Cir. 2015) ("Ordinarily, causation may be inferred from close temporal

proximity."). Although the Second Circuit has not defined "the outer limits beyond which a temporal relationship is too attenuated to establish causation," a period of one-and-a-half years or even nine months is too remote. *See Gorzynski*, 596 F.3d at 110–11 ("Though [the Second Circuit] has not drawn a bright line defining, for the purposes of a *prima facie* case, the outer limits beyond which a temporal relationship is too attenuated to establish causation, [it has] previously held that five months is not too long to find the causal relationship.").

Here, the one-and-a-half years between Plaintiff's April 2013 Charge and his termination on September 26, 2014 is too large a gap to support a retaliation claim based on temporal proximity. (Am. Compl. 3); *see, e.g.*, *Riddle v. Citigroup*, 640 F. App'x 77, 79 (2d Cir. 2016) ("This gap of some sixteen months is too long to support a retaliation claim based solely on temporal connection."). Nevertheless, Bazelais' statements to Plaintiff when he was completing the April 2013 Charge and the accusations she lodged against Plaintiff only a few days after she saw him complete the April 2013 Charge, in combination, are enough to allege a causal connection between the filing of the charge and Plaintiff's termination resulting from Bazelais' allegations.

Plaintiff alleges that Bazelais orchestrated the events that ultimately led to his termination after she saw him complete the April 2013 Charge. Plaintiff's showing of causation is supported by the temporal proximity between late April of 2013, when Bazelais saw Plaintiff complete the EEOC charge, and May 1, 2013, when she accused him of engaging in "verbal and physical expressions of hostility" and using "abusive or offensive language or gestures" toward her. (NYCHA Letter dated Jan. 16, 2014.) Approximately two months after that, on July 9, 2013, Turner and Agbai also accused Plaintiff of misconduct, which Plaintiff attributes to Bazelais' as she orchestrated a plan for NYCHA to terminate Plaintiff after she saw him complete the April

2013 Charge.  (Am. Compl. 12–13; Pl. Opp'n 18–19; Section 75 Report and Recommendation at 17–20); *see Vega*, 801 F.3d at 91 (holding that the but-for causation requirement was met where there was a temporal proximity of two and three months between the adverse actions and the protected activity).  It was the allegations made by Bazelais, Turner and Agbai that led to the charges Plaintiff received on January 16, 2014 and ultimately to his termination on September 26, 2014.  (NYCHA Letter dated Jan. 16, 2014 at 255–57; Am. Compl. 3; NYCHA Letter dated Sept. 24, 2014.)

The causal connection is further supported by Bazelais' statement to Plaintiff, as she watched him complete the April 2013 Charge, that she saw what he was doing and knew "what [she could] do."  (Pl. Opp'n 18–19.)  Plaintiff's allegations are sufficient to show causation at this stage of the proceeding.  *See, e.g.*, *Gregory*, 243 F.3d at 701 (holding that the plaintiff's allegations sufficiently alleged causation where there was temporal proximity between the protected activity and the adverse employment actions and a supervisor "intensified his harassment" of the plaintiff after the plaintiff engaged in protected activity, stated that the plaintiff "should 'get on board or quit,'" and shared "sneering comments" about the plaintiff's lawsuit); *White v. Dep't of Corr. Servs.*, 814 F. Supp. 2d 374, 390 (S.D.N.Y. 2011) (finding a causal connection where, in addition to temporal proximity of one month, plaintiff presented evidence that a supervisor yelled at her and said "he did not know what was wrong with her" after she filed an EEOC charge, and she subsequently received an evaluation that noted that she created "disharmony in the workplace").[32]

---

[32]  NYCHA argues that the factual findings in the Section 75 hearing, which substantiated the charges against Plaintiff are "highly probative of the absence of discriminatory intent" and therefore Plaintiff has not adequately alleged causation.  (Def. Mem. 21–23.)  However, the findings made at the section 75 hearing are not determinative of causation.  Even though there

Plaintiff has sufficiently alleged a causal connection between his protected activity and subsequent termination.

In addition, Plaintiff adequately pleads a NYCHRL retaliation claim because Bazelais knew he filed the April 2013 Charge and, as a result, was motivated to falsely accuse Plaintiff of improper conduct and orchestrate his termination. *See Ya-Chen Chen v. City Univ. of N.Y.*, 805 F.3d 59, 76 (2d Cir. 2015) ("NYCHRL's retaliation provision is broader than Title VII's — protecting plaintiffs who 'oppos[e] any practice forbidden under' the law from conduct 'reasonably likely to deter a person engaging in such action.'" (quoting *Mihalik*, 715 F.3d at 112)).

Accordingly, Plaintiff has alleged the necessary elements of a retaliation claim under Title VII, the NYSHLR and the NYCHRL.[33]

---

was a Section 75 hearing that substantiated Plaintiff's termination, and Plaintiff is precluded from arguing that the allegations against him were false, he is not barred from arguing that the termination was also motivated by retaliatory animus. *See, e.g., Leon v. N.Y.C. Dep't of Educ.*, 612 F. App'x 632, 635 (2d Cir. 2015) ("[T]he hearing officer's determination that [the plaintiff] had engaged in the charged conduct, and that these violations called for h[er] termination, does not preclude a jury from later finding that [the plaintiff] was also terminated at least in part because of [retaliatory or discriminatory reasons]. The plaintiff could be successful on the [discrimination or retaliation] claims even if the jury were to accept that there were legitimate reasons for terminating h[er], too." (alterations in original) (quoting *Matusick v. Erie Cty. Water Auth.*, 757 F.3d 31, 47 (2d Cir. 2014)); *Vega*, 801 F.3d at 91 ("'[B]ut-for' causation does not [, however,] require proof that retaliation was the only cause of the employer's action, but only that the adverse action would not have occurred in the absence of the retaliatory motive." (alterations in original) (quoting *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 846 (2d Cir. 2013)); *Senno v. Elmsford Union Free Sch. Dist.*, 812 F. Supp. 2d 454, 472 (S.D.N.Y. 2011) ("[A] finding that [p]laintiff was terminated for cause does not bar [p]laintiff's Title VII claim. Even if [p]laintiff cannot dispute the factual findings of the [h]earing [o]fficer's decision, [p]laintiff can still prevail if he shows that [d]efendants acted with an improper motive in bringing charges against [p]laintiff."). Thus, Plaintiff need not allege that retaliatory animus was the *sole* but-for cause of his termination, but only that retaliatory animus was *a* but-for cause of his termination.

[33] Plaintiff fails to state NYSHRL and NYCHRL retaliation claims against Turner or Agbai because he does not allege that either displayed retaliatory animus, but only that Bazelais

### a. Section 1983 due process claim

Plaintiff alleges that his due process rights were violated because Gold "never questioned the false testimony of the three witnesses that accused [him] of workplace violence," and "false testimony by witnesses at a trial or trial-like hearing is a violation of due process," requiring reversal. (Am. Compl. ¶¶ 45, 106.) NYCHA argues that Plaintiff fails to state a procedural or substantive due process claim. (Def. Mem. 23–25.) As discussed below, the Court finds that Plaintiff fails to state a claim for violation of his due process rights.

### i. Procedural due process

Plaintiff appears to assert that Gold violated Plaintiff's due process rights because he acted in a random and unauthorized manner in adjudicating his Section 75 hearing. (Am. Compl. ¶¶ 45, 106.)

The Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty or property without due process of law, and "those who seek to invoke its procedural protection must establish that one of these interests is at stake." *Victory v. Pataki*, 814 F.3d 47, 59 (2d Cir. 2016) (internal quotation marks omitted) (quoting *Graziano v. Pataki*, 689 F.3d 110, 114 (2d Cir. 2012). A court first asks "whether there exists a liberty or property interest of which a person has been deprived," and if so, "whether the procedures followed by the State were constitutionally sufficient." *Id.* (internal quotation marks omitted) (quoting *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011)). "In evaluating what process satisfies the Due Process

---

used them to further her retaliatory purpose. However, as to NYCHA, the same cat's-paw theory of liability that may subject NYCHA to liability for Bazelais' discriminatory animus, also may subject NYCHA to liability for Bazelais' retaliatory intent. *See Vasquez*, 835 F.3d at 272–73 (holding that a non-supervisor, low-level employee may be held liable under a cat's-paw theory where "the employer's own negligence gives effect to the employee's animus and causes the victim to suffer an adverse employment action" (citing *Staub*, 562 U.S. at 417, 422 n.4)).

Clause, the Supreme Court has distinguished between (a) claims based on established state procedures and (b) claims based on random, unauthorized acts by state employees." *Rivera-Powell v. N.Y.C. Bd. of Elections*, 470 F.3d 458, 465 (2d Cir. 2006) (citation and internal quotation marks omitted). "When the state conduct in question is random and unauthorized, the state satisfies procedural due process requirements so long as it provides [a] meaningful post-deprivation remedy." *Id.* Plaintiff's claim fails because the process he was afforded satisfies due process.

NYCHA does not dispute that Plaintiff has a constitutionally-protected property interest in his public employment with NYCHA. *See* N.Y. Civ. Serv. Law § 75 (providing that covered employees "shall not be removed or otherwise subjected to any disciplinary penalty provided in this section except for incompetency or misconduct shown after a hearing upon stated charges pursuant to this section"); *O'Connor v. Pierson*, 426 F.3d 187, 196 (2d Cir. 2005) ("[I]t is well established that the state-law property interest of government employees who may only be discharged for cause, such as tenured teachers, is a constitutionally protected property interest for purposes of the Fourteenth Amendment."); *O'Neill v. City of Auburn*, 23 F.3d 685, 688 (2d Cir. 1994) ("We have previously held that [section] 75 gives covered employees a property interest in their employment, so that they may not be terminated without notice and hearing.").

Plaintiff's claim fails however, because, even if Gold was biased in carrying out his adjudicatory responsibilities, the pre-termination hearing and the availability of Article 78 review are sufficient to ensure that Plaintiff's procedural due process rights were not violated, even if Gold was biased in carrying out his adjudicatory responsibilities. *See Locurto v. Safir*, 264 F.3d 154, 174–75 (2d Cir. 2001) (holding that a biased adjudicator at a pre-termination hearing does not violate due process and Article 78 provides an adequate post-deprivation hearing before a

neutral adjudicator for due process purposes); *Men of Color Helping All Soc'y, Inc. v. City of Buffalo*, 529 F. App'x 20, 23 (2d Cir. 2013) ("When . . . a public employee is terminated, procedural due process is satisfied if the government provides notice and a limited opportunity to be heard prior to termination, so long as a full adversarial hearing is provided afterward." (quoting *Locurto*, 264 F.3d at 171)); *Leary v. Civil Serv. Emps Ass'n Region 3*, 516 F. App'x 42, 43 (2d Cir. 2013) ("Employees who wish to challenge the basis for their termination before a neutral adjudicator may do so in a post-termination proceeding under Article 78 of New York's Civil Practice Law and Rules, which we described as 'a wholly adequate post-deprivation hearing for due process purposes.'" (citing *Locurto*, 264 F.3d at 175)); *Dupont v. N.J. State Police*, No. 08-CV-1022, 2009 WL 2486052, at *6–7 (S.D.N.Y. Aug. 14, 2009) (dismissing a procedural due process claim based on allegedly false testimony presented at a termination hearing because of the availability of Article 78 review).

Accordingly, because Plaintiff had a hearing before Gold and had the opportunity to challenge Gold's decision through an Article 78 proceeding, Plaintiff received all the process he was due. The Court therefore dismisses Plaintiff's procedural due process claim. *See Grillo v. N.Y.C. Transit Auth.*, 291 F.3d 231, 234 (2d Cir. 2002) ("This court has 'held on numerous occasions' that where, as here, a party sues the state and its officials and employees for the arbitrary and random deprivation of a property or liberty interest, 'an Article 78 proceeding is a perfectly adequate postdeprivation remedy.'" (quoting *Hellenic Am. Neighborhood Action Comm. v. City of New York*, 101 F.3d 877, 880 (2d Cir. 1996))).

### ii. Substantive due process

To state a claim for substantive due process a plaintiff must allege that: (1) he had a valid property interest and (2) "defendants infringed on that property right in an arbitrary or irrational

manner." *Royal Crown Day Care LLC v. Dep't of Health & Mental Hygiene of City of N.Y.*, 746 F.3d 538, 545 (2d Cir. 2014) (quoting *Cine SK8, Inc. v. Town of Henrietta*, 507 F.3d 778, 784 (2d Cir. 2007)); *see also Leder v. Am. Traffic Sols., Inc.*, 630 F. App'x 61, 62 (2d Cir. 2015) (same). A government employer's conduct violates substantive due process "only if the employer abuses some power unique to its role as a government entity." *Thomas v. N.Y.C. Dep't of Educ.*, 938 F. Supp. 2d 334, 353 (E.D.N.Y. 2013) (citation omitted); *see also McClary v. O'Hare*, 786 F.2d 83, 89 (2d Cir. 1986) ("We do not think that improper actions taken by employers violate an employee's substantive due process rights simply because that employer is a government official."); *Sussman v. N.Y.C. Health & Hosps. Corp.*, No. 94-CV-8461, 1997 WL 334964, at *12 (S.D.N.Y. June 16, 1997) (noting that "the greater weight of authority in this Circuit indicates that [a substantive due process] claim is stated only when a governmental employer abuses some power unique to its role as a governmental entity").

However, "where a specific constitutional provision prohibits government action, plaintiffs seeking redress for that prohibited conduct in a § 1983 suit cannot make reference to the broad notion of substantive due process." *Velez v. Levy*, 401 F.3d 75, 94 (2d Cir. 2005); *Ratajack v. Brewster Fire Dep't, Inc. of the Brewster-Se. Joint Fire Dist.*, 178 F. Supp. 3d 118, 147 (S.D.N.Y. 2016) (granting summary judgment as to a substantive due process claim where the basis for the claim fell within the "ambit of other provisions of the Constitution — specifically, the First Amendment and the Due process Clause of the Fourteenth Amendment — thereby closing off [the plaintiff's] ability to seek relief by invoking the concept of substantive due process").

Here, as discussed above, there is no dispute that Plaintiff has a constitutionally-protected property interest in his public employment with NYCHA. Nevertheless, Plaintiff fails to state a

claim for a violation of substantive due process because his substantive due process claim is based on the same facts as his procedural due process claim. Plaintiff "cannot make reference to the broad notion of substantive due process" to bring a claim that is covered by another, more specific constitutional provision. *Velez*, 401 F.3d at 94; *Rother v. N.Y. State Dep't of Corr. & Cmty. Supervision*, 970 F. Supp. 2d 78, 100 (N.D.N.Y. 2013) (dismissing a substantive due process claim where it "s[ought] to remedy the same harm and challenge[d] the same conduct" as the plaintiff's procedural due process claim).

Moreover, even if Plaintiff's claim was not subsumed by the procedural due process claim, Plaintiff's allegations are indistinguishable from an ordinary tort action. He alleges that certain employees fabricated statements, which led to the termination of his employment, but such conduct is not the type of abuse of government power necessary to state a substantive due process claim. *See McClary*, 786 F.2d at 89 ("We do not think that improper actions taken by employers violate an employee's substantive due process rights simply because that employer is a government official," and "the only fact distinguishing this case from an ordinary tort action brought by an employee against an employer is the identity of th[e] employer [as a governmental official]."); *Mancuso v. Village of Pelham*, No. 15-CV-7895, 2016 WL 5660273, at *18 (S.D.N.Y. Sept. 29, 2016) (dismissing a claim that falsifying records and creating "unfounded attacks upon [the plaintiff's] character and work ethic," which ultimately led to the plaintiff's termination, in part because the actions were not "uniquely governmental in nature").

Accordingly, Plaintiff fails to allege a section 1983 claim for deprivation of due process.[34]

---

[34]  NYCHA also argues that Plaintiff fails to allege a basis for municipal liability. (Def. Mem. 24.) It is unclear from the Amended Complaint that Plaintiff intended to bring a section

## II. Conclusion

For the foregoing reasons, the Court grants NYCHA's motion to dismiss Plaintiff's claims against Turner and Agbai, Plaintiff's ADEA and due process claims, and Plaintiff's Title VII claim against Bazelais. As to the remaining Defendants, the Court denies NYCHA's motion to dismiss Plaintiff's Title VII, NYSHLR and NYCHRL gender discrimination and hostile work environment claims as well as Plaintiff's Title VII, NYSHLR and NYCHRL retaliation claims. The Court dismisses Turner and Agbai from the action. The Clerk of Court is directed to amend the docket accordingly. The Court directs the Marshals to serve Bazelais by serving the summons and the Amended Complaint on NYCHA.

Plaintiff is granted thirty (30) days from the date of this Memorandum and Order to file an affidavit specifying the basis for any sexual orientation and disability discrimination claims he wishes to pursue under the NYSHRL and the NYCHRL. The affidavit should include: (1) the date(s) on which Defendants discriminated against Plaintiff based on his sexual orientation and disability; (2) the incidents, comments or employment actions that he believes were adverse and the frequency of such comments or actions; and (3) any negative effects the actions had on his ability to perform his work duties.

---

1983 municipal liability claim. However, because Plaintiff does not plausibly allege a deprivation of his constitutional rights, any claim for municipal liability against the City of New York also fail. *See Garcia v. Bloomberg*, 662 F. App'x 50, 52 (2d Cir. 2016) ("The 'City cannot be liable under *Monell* where [a plaintiff] cannot establish a violation of his constitutional rights.'" (alteration in original) (quoting *Askins v. Doe No. 1*, 727 F.3d 248, 253 (2d Cir. 2013))).

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith and therefore *in forma pauperis* status is denied for purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

SO ORDERED:

_____s/ MKB_____
MARGO K. BRODIE
United States District Judge

Dated: September 29, 2017
      Brooklyn, New York